## FREDERICK E. ROCK *vs.* INDIAN ORCHARD MILLS.

Hampden.    Sept. 29. — Oct. 22, 1886.    DEVENS & W. ALLEN, JJ., absent.

In an action by a boy thirteen years old against a corporation for personal injuries sustained, while in the defendant's employ, by getting his hand in a machine called a winder, it appeared that this machine was about four feet and four inches long and two feet and ten inches high, consisting of three smooth steel cylinders, two large ones, with a small one between them on which cotton was wound; that they revolved about fifteen to twenty times a minute; that the gears and pulleys connected with them were covered, but there was no fence or other protection against danger from the other part of the machine; that a machine called a card-grinder stood about four and one third feet from the winder, and the plaintiff, in the course of his work, was required to pass between these machines, but did not work on the winder; and that the plaintiff had been in the defendant's employ three weeks and three days when he was injured. *Held*, that the winder was not a peculiarly dangerous machine; that the defendant was not liable for neglect to fence it; and that, if the defendant sufficiently instructed the plaintiff as to the dangers of the machine, the action could not be maintained.

In an action by a boy against a corporation for personal injuries sustained, while in the defendant's employ, by getting his hand in a certain machine, between which and another machine he was required to pass in doing his work, if it appears that the first-named machine is not peculiarly dangerous, evidence is inadmissible to show that a gate might have been put up at slight expense in front of the machine, or that either machine might as well have been put in another part of the room.

A bill of exceptions stated that, after the charge had been delivered to the jury, the plaintiff excepted to certain portions of the charge, and set forth detached sentences of the charge as those excepted to, and did not give the context. *Held*, that the exceptions could not be sustained, unless it appeared that there was some substantial error which misled the jury.

In an action for personal injuries sustained while in the defendant's employ, the plaintiff's bill of exceptions set forth detached sentences of the judge's charge to which he excepted, one of which was that the question was whether the accident was caused by any act of the defendant, or was the result of want of due care on the part of the plaintiff. *Held*, that the plaintiff had no ground of exception.

In an action for personal injuries sustained by a boy while in the defendant's employ, there was evidence that the injuries were caused by his playing with a machine, on which he was not at work, and which he had been cautioned to keep away from. *Held*, that the plaintiff had no ground of exception to a ruling given to the jury, that, if he was playing with the machine, he could not recover.

In an action for personal injuries sustained by a boy while in the defendant's employ, by his hand coming in contact with a machine, on which he was not at work, but which he was required to pass, the bill of exceptions stated that the plaintiff excepted to certain portions of the judge's charge, and set forth certain detached sentences of the charge as those excepted to. One of these was, that

there was nothing in the nature of the machine which rendered it peculiarly and especially dangerous. The plaintiff did not ask to go to the jury on this question. *Held*, that he had no ground of exception.

TORT for personal injuries sustained by the plaintiff while in the defendant's employ. Answer, a general denial. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiff introduced evidence tending to show that he, a boy between thirteen and fourteen years of age, was employed by the defendant in its cotton mill as a railway or card boy; that it was a portion of his duties to fix and press up the "hangs," to attend to fifty-six cards, to clean the cards, to stop and start them once every day, when they were stripped, to see that the cotton ran in a continuous, even stream into the railway, so called, and that ends were kept running and the cotton kept smooth, and, whenever the railway or floor in the alleys between the rows of cards became dirty, to clean the same with a broom; that the brooms used for this purpose were kept in the wash-room; that he was instructed by the defendant, to keep close watch of his work, "to keep his eye on it," and to keep his work, the railways, and the floor in the alleys and about the cards clean, and, whenever it was necessary to sweep or clean up, to go to the wash-room and get his broom, that he must go there backwards, so as to keep his work and the card as much as possible in view, that he must back out from the alley in nearly a straight line until he came near a machine called a winder, which was about four feet four inches long and two feet ten inches high, consisting of three steel cylinders, pulleys, belts, frame, &c., that he must then turn, still backing, and pass between said winder and a card-grinder, between said card-grinder and a block for cylinder from the winder, until he arrived at the wash-room door, that, when he arrived at said door, he must seize the broom and hurry back to his cards, and that, when he had completed sweeping, he must return the broom to the wash-room, pursuing the same course and in the same manner as when he went for it; that two of the three steel cylinders of the winder are large, and one is a small one between the others, on which cotton is wound; that the winder was almost constantly in motion; that these cylinders revolved from fifteen to twenty times a

minute, winding on the middle cylinder a large roll of cotton in from three to four minutes, when that was taken out and another cylinder put in its stead, around which the cotton was started; and that the layers of cotton were very thin, and for many revolutions there was hardly a perceptible increase of size of the middle cylinder.

The plaintiff contended, upon this evidence, that the winder was a dangerous machine; that he was never cautioned or instructed in any manner that there was any danger attending his employment or the manner of obtaining the broom, or that any of the machinery was dangerous; and that he was never warned or told to be careful.

There was evidence tending to show that there was no guard, gate, rail, safeguard, or other protection in front of, around, or near said winder, excepting that the gears and pulleys were covered; that the plaintiff was never informed that said winder was dangerous; that about four and one third feet from said winder was a card-grinder, a machine four and two thirds feet long, three feet wide, and three feet high, between which and the winder the plaintiff had to go in order to obtain the broom; that opposite the card-grinder, and three feet and six inches therefrom, and near the winder, was a large wooden stationary block used as the receptacle for the winder cylinder, between which block and the card-grinder the plaintiff had to go, in order to reach the wash-room and obtain the broom; that the foregoing was the only way and the only direction in which to go; that the distance from the doorway of the wash-room to the winder was nine feet, and the distance from the winder to the second card in the row toward the north side of the room was seventeen feet; and that the entire distance from the wash-room door, over the course which the plaintiff was instructed to pursue, was about twenty-six feet.

The plaintiff contended, upon the evidence, that the defendant was negligent in not giving him sufficient and proper instructions how to do this work, and in not giving him any cautions or warnings of the dangers attending his employment, the method and manner of doing his work, and of the dangers of the winder and the other machinery contained in said card-room; that when the plaintiff had been about three weeks and three days in the

employ of the defendant, at about ten o'clock in the forenoon, . it became necessary, as a part of his work, to clean and sweep the frames and railways and floor in the alley between the rows of cards; that he started backward from the second card in the row nearest the north wall; that he backed out from the alley in nearly a straight line, until he came near the machine called the winder; that he then turned, still backing (his left hand coming next to the winder), so as to back down to the wash-room and obtain the broom, when, in so turning, his left hand was caught between the cylinders of the winder, which were in motion, and he suffered the injury complained of; that there was no one near the winder to caution or warn him; and that a new roll of cotton had just been started, which had just begun to wind about the middle cylinder.

The plaintiff contended, upon the evidence, that said machine was dangerous; that the manner and course which the plaintiff was instructed to pursue were improper and dangerous. He also introduced evidence that he had never worked in any mill before, and was entirely ignorant of machinery, and of the dangers of the same; that the defendant knew he was entirely inexperienced; that, during his employment, he passed this machine, by said course, some six times a day; and that he had no employment on the machine he was hurt on.

The plaintiff also introduced evidence tending to show that the card-grinder before referred to could have been as well placed in another part of the same room, where there was unoccupied space, and where it could have been used with equal facility, and contended, from said evidence, that, by so placing it, the danger to which he was exposed from the winder, and by which he was injured, would have been done away with. This evidence was objected to by the defendant, but the objection was withdrawn, and the evidence was admitted.

The plaintiff also offered evidence tending to show that a gate could have been constructed, at very slight expense, in front of the winder, with weights, running or sliding on posts or poles, so arranged that it would be very susceptible to the touch, in raising or lowering; that such a gate would not interfere in the slightest degree with the work to be performed upon, near, or by the machine; and that it would obviate the danger a person

would be exposed to in passing the machine in the way in which this plaintiff passed, or in any other way. On objection by the defendant, the judge ruled that this evidence was not admissible; and the plaintiff excepted.

The plaintiff further offered evidence, by another witness, who had worked in the room where the plaintiff was injured, but some time before the plaintiff's employment, and in the same capacity as the plaintiff, that the room was in the same condition then as to the location of machinery, and in every other way, as when the plaintiff was injured; that the said card-grinder could have been placed as well in another part of the room, where there was ample unoccupied space, and where it could have been used with equal facility; and that, by so placing it in another part of the room, the danger to which the plaintiff was exposed from the winder, and by which he was injured, would have been done away with. Upon objection, the judge ruled that this evidence was not admissible, and excluded the same, saying that he should rule in accordance with the cases of *Sullivan* v. *India Manuf. Co.* 113 Mass. 396, and *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. To this ruling and exclusion of evidence the plaintiff excepted.

The defendant offered evidence from which it contended that the plaintiff was never instructed to go backward, as he stated; that the plaintiff had been warned and cautioned to keep away from this machine repeatedly; and that he was playing with it when he was injured, and not engaged in any duty.

The plaintiff asked the judge to instruct the jury as follows: "1. If the jury are satisfied that the defendant ran the machine on which the plaintiff was injured, in the location it was in at the time of the injury, without fencing or otherwise sufficiently guarding it, so that the plaintiff was exposed while in the defendant's employ to danger, of which it gave no sufficient notice, then the defendant was negligent. 2. If the jury are satisfied that this machine and the card-grinder could as well have been placed in another portion of the room, and that by so doing the plaintiff would have been relieved from risk or danger from the winder, while going to or from the wash-room in the course of his employment, and that the defendant failed so to place it, then the defendant was negligent." The judge refused so to rule.

At the close of the charge to the jury, and before they retired, the plaintiff excepted to the following portions of the judge's charge:

1. " Was that accident caused by any act of the defendant? That is the question and the only question in this case, it seems to me, and it will be for you to determine whether the defendant did any act which caused this injury, or whether it was the result of the negligence and want of due care on the part of the plaintiff."

2. "I think it would be my duty, in case there was no dispute here in the evidence, and it was undisputed that he was then playing with this cotton on the roller, running his hands over it, and calling the attention of others to something, by whistling or anything of that kind, it would be my duty to say that that would be such negligence as would prevent him from being entitled to recover, because it was none of his work, no part of his business, to be there. You have simply then the question to determine what was the fact."

3. " If he was then playing with this cotton on these rolls with his hands, I should instruct you to return a verdict for the defendant."

4. " There was nothing in the nature of this machine which rendered it peculiarly and especially dangerous, except to one who puts his hands on it, and therefore there is not any reason why any fence should be put about it. The fact that there was no fence is not to be assumed by you as a part of the plaintiff's case, because the defendant is not obliged to fence ordinary machinery. It is only such machinery as is specially dangerous that a man is obliged to fence, when some special danger arises from the machinery. Nor does it lie in the mouth of the plaintiff to say that the defendant might, by putting this machinery in a different place from where it was, avoid danger, and therefore it ought to be held in damages by reason of not putting the machinery in the best possible place. It was put there before he entered upon the employment, and he received instructions. Whether those instructions were sufficient or not, is for you to say."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*W. H. Brooks*, for the plaintiff.

*G. M. Stearns*, for the defendant.

MORTON, C. J. The plaintiff, who is a boy thirteen years old, was injured, while in the employ of the defendant, by getting his hand in a machine called a "winder." This is a machine about four feet and four inches long and two feet and ten inches high, consisting of three smooth steel cylinders, two large ones with a small one between them, on which cotton is wound. They revolve about fifteen to twenty times a minute. The gears and pulleys connected with them were covered, but there was no fence or other protection against danger from the other part of the machine. A machine called a "card-grinder" stood about four and a third feet from the winder, and the plaintiff was required to pass between these machines in doing his work.

The plaintiff had been in the employ of the defendant three weeks and three days when he was injured, and, in the course of his work, had to pass this machine about six times a day; but he did not work on it. It is clear that the winder was not a peculiarly dangerous machine, and that the defendant could not be held liable merely because of a neglect to fence it. *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396.

It was the duty of the defendant to give suitable instructions to the plaintiff, having reference to his age and capacity, so as to enable him to understand the dangers, whatever they were, of the employment in which he was engaged; and, as nothing appears to the contrary, we must assume that the court gave appropriate instructions to the jury upon this point.

The defendant was not required by law to fence this machine, but had the right to use it in the manner in which it did; and, if it sufficiently instructed the plaintiff as to the dangers of the machine, he took the risk of those dangers, and cannot recover because the machinery might have been set up so as to be less dangerous.

The issue before the jury was whether the defendant had given the plaintiff such instructions; and the court rightly rejected evidence offered by the plaintiff to show that a gate might have been put up, at slight expense, in front of the winder, or that the winder or the card-grinder might as well have been put in another part of the room. *Coombs* v. *New Bedford Cordage Co.*, and *Sullivan* v. *India Manuf. Co.*, *ubi supra.*

The court also rightly refused the two requests for instructions presented by the plaintiff. Having instructed the jury that the defendant was required to give the plaintiff suitable notice and instructions as to the dangers of the work he was set to do, the court was not obliged to give the first instruction requested in the words of the request, because it implies that the defendant was guilty of negligence if it did not fence the machine, and therefore would mislead the jury; the second request calls for a ruling that the defendant was liable if it could have placed the winder in another part of the room. Neither of the requests could properly be given.

The exceptions taken to the charge of the presiding justice remain to be considered. The bill of exceptions states that, after the charge, the plaintiff excepted to " portions of the judge's charge," and then proceeds to give certain detached sentences of the charge. The context or connection with other parts of the charge is not given, and the plaintiff did not state any reasons for his objections, so as to give the judge the opportunity to correct any accidental inaccuracy in his expressions. Such exceptions ought not to be sustained, unless the plaintiff makes it appear that there is some substantial error in the charge which misled the jury. The first exception is to the statement in the charge, that the question was whether the accident was " caused by any act of the defendant," or was the result of want of due care on the part of the plaintiff.

The plaintiff now argues that this prevented the jury from finding for him, if they found that the accident was caused by the negligent omission of its duty by the defendant. But it is reasonably clear that this is not the fair meaning of the charge. Taken in connection with other instructions which must have been given, the expression " any act of the defendant " was intended and understood as including any act of omission, as well as of commission.

There was evidence tending to show that the plaintiff was carelessly playing with the machine when he was injured; and the second and third parts of the charge objected to are merely statements that, if the jury found this to be the fact, the plaintiff was guilty of contributory negligence, which would prevent him from recovering; and they are not open to objection.

The fourth part objected to states, in substance, that the defendant was not obliged to fence this machine, or to remove it to another part of the room, which, as we have before said, was correct. It was not charging upon the facts to state the self-apparent fact that this machine was not a peculiarly dangerous one. Besides, the plaintiff did not ask to go to the jury upon this point, and cannot now complain that he was deprived of that right.                          *Exceptions overruled.*