ANGIE CUNNINGHAM, Admx. *vs.* THE BATH IRON WORKS.

Sagadahoc.    Opinion February 27, 1899.

*Negligence.    Master and Servant.    Unguarded Machinery.    Instructions.    Assuming Risk.    Burden of Proof.*

While it is the duty of the master to exercise ordinary care and foresight in providing safe machinery and a reasonably safe place in and about which the " helpers " and other laborers are required to work, yet the fulfillment of this duty must be tested by the experience of employees who are themselves in the exercise of due care and vigilance, and not with reference to those who are themselves negligent or venturesome, or the unfortunate victims of simple and unaccountable accidents. Absolute safety is not guaranteed to the laborer by the contract of employment.

The failure of the master to have cog-wheels in a machine shop covered and guarded by a hood, cannot be deemed negligence, under the following conditions and circumstances : The cog-wheels and their gearing in connection with which the injury was received, were of the usual and familiar type. There was nothing peculiarly dangerous about them. All the laborers in the shop were constantly reminded both by sight and hearing of the power as well as of the existence of these wheels. The helpers were not required to operate the angle-iron shears, or to perform any duty within three feet of the wheels on the inward-rolling side.

Whether a failure to establish or enforce a regulation for the removal of debris consisting of scraps of angle-iron and other waste material on the shop floor at the time of the accident, copld be held negligence ; and if so, whether it must be deemed the negligence of a fellow-servant, *held ;* that it is unnecessary to consider, where there is no evidence of its existence at the time of the injury in question.

The obligation resting upon the employer to give his employees such instructions as are reasonably necessary to enable him to understand the perils to

which he is exposed, must be considered with reference to the reciprocal obligation resting upon the laborer to exercise the senses and faculties with which he has been endowed in order to discover and comprehend these perils for himself. He is not bound to inform the laborer of what he already knows, or what by the exercise of ordinary care and attention, he might have known.

It affirmatively appears in this case that the helper, who was injured, was a bright and intelligent youth who had just entered upon his eighteenth year. He clearly had the opportunity to observe the revolving cog-wheels from day to day, and the capacity to comprehend the danger of coming in contact with their gearing. He had all the information upon that subject which could have been derived from the most elaborate instructions. It is accordingly *held;* that if a laborer continues in the service of his employer under such circumstances, he will be deemed to have waived all objections to the machinery and appliances, and to have voluntarily assumed the risks incident to the service performed.

An action, brought by an administrator, to recover damages for the death of his intestate, alleged to have been caused by the negligence of the employer, cannot be maintained when the plaintiff wholly fails to show affirmatively, either by direct evidence, or by legitimate inference from any evidence in the case, that the intestate was in the exercise of due care, and did not negligently contribute to the injury. Such deficiency of proof is alone fatal to the plaintiff's action.

ON MOTION AND EXCEPTIONS BY DEFENDANT.

This was an action of tort, brought by the mother, as administratrix of the estate, of Mark W. Cunningham, to recover damages for injuries sustained by her son while in the employ of the defendant, and as a result of which he died on the sixth day of June, 1896. The plea was the general issue. The case was tried to a jury at the December term, 1897, of this court, in Sagadahoc county, and a verdict returned for the plaintiff in the sum of $2,162.62.

The alleged acts of negligence on the part of the defendant are stated in the declaration as follows:

In a plea of the case, for that on the sixth day of June, 1896, the said defendant was a corporation engaged in the manufacture of iron and steel products in various forms at said Bath, and in the prosecution of said business it possessed and operated a large amount of machinery, and especially a certain machine for the purpose of cutting its iron and steel into required lengths, which machine was known as an angle-iron machine and was equipped

with divers wheels, belts, pulleys, knives and cog-gear for the purpose aforesaid; that in its said business the defendant employed a large number of servants including the plaintiff's intestate, and was bound by law to use all diligence to provide for each of them a safe place in which to work, and reasonably safe machinery and gears in connection with which to work, and to supply and maintain all proper guards to insure the reasonable safety of its said workmen and especially of the plaintiff's intestate; that on said sixth day of June, 1896, the plaintiff's intestate was a minor of the age of seventeen years, and was then in the employ of said defendant, and as a part of his duties in said employment was set to work as assistant upon said angle-iron machine; but that in disregard of the defendant's duties aforesaid, said machine was so dangerously and negligently constructed with reference to its wheels and gears that any one coming in contact with the same was exposed to great and unnecessary danger of limb and life; that said machine and its dangerous wheels and cog-gears aforesaid were negligently left by the defendant wholly unguarded; and that in addition the floor about said machine and where the plaintiff's intestate was obliged to work in connection with said machine was negligently left obstructed by scraps and jagged pieces of iron and steel which the workman must necessarily pass over, and by reason of which he was in constant danger of falling upon said unguarded gears; and that the plaintiff's intestate, being ignorant of the dangers aforesaid, and being of tender years and inexperienced in machinery, was on the day aforesaid set to work upon said dangerous and unguarded machine without any proper warning or instructions; in consequence whereof on the day aforesaid said plaintiff's intestate, while engaged in the performance of his work in connection with said machine, and while in the exercise of due care himself in all respects, by reason wholly of the defendant's negligence in the construction and operation of said machine, in the particulars above described, tripped upon said jagged pieces of iron and steel and was thrown against said unguarded gears, and by them drawn into said machinery in such a way that both his arms were mangled, crushed and cut off and his skull cracked; that by reason

thereof said plaintiff's intestate suffered great agony of mind and body, was obliged to submit to the amputation of both his arms in the effort to save his life, and after surviving for many hours in great agony and being subjected to great expense for medical attendance and medicines finally died; all of which was without fault on his part and by reason wholly of the defendant's negligence as aforesaid, to the damage of the said plaintiff (as she saith) the sum of ten thousand dollars, etc.

The disposition of the case by the court upon the motion renders a report of the exceptions, taken to the admission of testimony, unnecessary.

*O. D. Baker* and *F. L. Staples*, for plaintiff.

*L. C. Cornish* and *J. M. Trott*, for defendant.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

WHITEHOUSE, J.   In this action the plaintiff, as administratrix on the estate of her son, seeks to recover damages for injuries sustained by the intestate on the sixth day of June, 1896, while in the employment of the defendant, resulting in his death on the same day.

The jury returned a verdict for the plaintiff in the sum of $2,162.62, and the case comes to the law court on motion and exceptions by the defendant.

The defendant was engaged in building iron vessels, and for the purpose of cutting off pieces of angle iron to be used in their construction, a powerful machine was employed known as the "angle-iron-shears." This machine was located in the southwest corner of a large building called the "plate shop," one side of the machine being coincident with the exterior wall of the building. It was provided with two knives, one on either side, which could be used together or independently, each being operated by its own lever, by which the "clutch" could be thrown in or out at pleasure. For the purpose of giving more effective operation to the machine, a heavy fly wheel was hung upon a shaft which transmitted the

power to the knives by means of cog-wheels.   The larger wheel was three feet in diameter, the bottom of it being two feet and ten inches from the floor, and its gear or connection with the smaller wheel was five feet and four inches from the floor.   The intestate is described as of about the average height.   The large wheel made ten revolutions, and the small one thirty-four revolutions per minute.   Being in the corner of the building, these wheels on the front side were in plain view from all parts of the shop.   On this side the cogs turned inward and were not provided with any shield or guard.   On the back side the wheels were in a comparatively dark place within three or four feet of the wall, and there the cogs turned outward.   These cog-wheels were in constant motion during the working hours of the day; but the knives were only operated when the cutting of the angle-iron was actually required, and this might be once or many times each day.

This machine was operated by one of the "fitters" whose duty it was to adjust the angle-iron fittings in their proper places in the vessel; and the mechanism of the gearing and levers was so arranged that the operator stood outside of the building, while the pieces of angle-iron, as they were cut from long bars, fell to the floor on the inside through a slot or trough inclined downward and forward.

At the time of the accident in question the intestate had been employed one month and one day in the capacity of helper or second hand to one of the fitters.   It was the duty of the helper, as the word implies, to accompany the fitter in his work, look after his tools and otherwise aid him in a general way.   It was one of his duties to pick up the pieces of angle-iron as they fell to the floor when cut by the fitter, and to carry them to any point desired; but he had no duty to perform in direct connection with the operation of the machine; and in removing the pieces of iron from the floor he was not required to come within three feet of the cog-wheels on the inward-turning side.

About eight o'clock on the morning of the accident, Mr. Tuck, one of the fitters, took his position on the outside of the building and set in motion the knife on the front side for the purpose of

cutting some angle-iron. The intestate was present in his capacity of helper and as the cutting proceeded, he passed around the end of the machine, picked up the pieces of iron as they fell and carried them to the base of a column about six feet distant. He had removed three pieces and returned to pick up the fourth. In doing so he had to pass behind the side of the machine and was momentarily out of the view of Mr. Tuck, who was looking down at his work on the outside. But he heard an outcry from the boy and looking up saw him with his arms in the gears. He had no other knowledge of the manner or the cause of the accident, and there was no other direct evidence in the case in relation to it.

It was not in controversy that the angle-iron machine itself was of a standard pattern and in general use in iron-working establishments like that of the defendant throughout the country. It was not claimed on the part of the plaintiff that the machine was improperly constructed or was in any respect defective or out of repair. But it was contended that there was actionable negligence on the part of the defendant in three particulars:—First, in allowing the cog-wheels in which the intestate was injured to remain unguarded and unprovided with a hood or shield of any kind to prevent accident and injury; second, in allowing the basal flange of the machine and the bolt and nut which secured it to the floor to project above the level of the floor, and in permitting the waste scraps of iron to accumulate on the floor, at points near which the intestate was required to go in picking up the angle iron; and, third, in omitting to give the intestate appropriate and sufficient instruction and warning in regard to the perils of the revolving cog-wheels on their in-rolling side.

On the part of the defendant it is strenuously and confidently urged that the evidence utterly fails to establish either the defendant's negligence on the one hand, or the intestate's due care and want of appreciation of the risk, on the other.

The principles of law applicable to these several contentions and to the respective rights and obligations of the parties, have so frequently been examined and distinguished in recent years by our court, as well as the courts of last resort in other states, that no

extended discussion of them is required in the consideration of this motion for a new trial as against the evidence.

It was the unquestioned duty of the defendant to exercise ordinary care and foresight to provide safe machinery and a reasonably safe place in and about which the helpers and other laborers were required to work; but the question of the fulfillment of this duty must be tested by the experience of employees who are themselves in the exercise of due care and vigilance, and not with reference to those who are themselves either negligent or the unfortunate victims of simple and unaccountable accidents. The fact that a laborer sustains a serious injury in the place of his service has no necessary tendency to prove the machinery unsafe or the place unsuitable. No machinery can be deemed safe for those who are thoughtless and inattentive or reckless and venturesome. Pure accidents will also continue among the inexplicable factors in the problem of life. Again, the fact that the accident might have been avoided by the exercise of extraordinary precautions on the part of the defendant has no necessary tendency to prove that the existing conditions did not meet the requirement of reasonable safety. Absolute safety under all circumstances is not guaranteed to the laborer by the contract of employment. The employer is not an insurer. He is not bound to furnish the safest machinery, nor to provide the best possible methods for its operation, in order to relieve himself from responsibility. He is only required to furnish instrumentalities that are reasonably and ordinarily safe and well adapted to the purpose for which they are designed. *Conley* v. *American Express Co.*, 87 Maine, 352; *Wormell* v. *Maine Central R. R. Co.*, 79 Maine, 397.

In the principal case the cog-wheels in question were of the usual and familiar type. There was nothing peculiarly dangerous about them. They were exposed to plain view from all parts of the building and a loud rumbling sound was produced by their motion. All the laborers in the shop were thus constantly reminded by both sight and hearing of the power as well as of the existence of these wheels. None of the employees were required to labor in close proximity to them. The helpers had no responsi-

bility whatever for the operation of the machine, and were not required to perform any duty within three feet of the wheels on the in-rolling side. Under these circumstances the failure of the defendant to have these wheels covered and guarded by a hood, cannot be deemed actionable negligence.

In *Rock* v. *Indian Orchard Mills*, 142 Mass. 522, the plaintiff was a boy of thirteen and was injured by getting his hand into the unguarded and rapidly revolving cylinders of a winder in a cotton mill; and it was held that as there was nothing in the nature of the machine which rendered it peculiarly or especially dangerous except to one who puts his hands on it, the defendant could not be held liable for his omission to fence it. The same doctrine was laid down in *Murphy* v. *American Rubber Co.*, 159 Mass. 266, and *Hale* v. *Cheney*, Ibid. 268. In each of these cases, the plaintiff was injured by coming in contact with an uncovered horizontal shaft near the floor. In the latter case, the court said: "Upon the evidence the defendant did not owe to the plaintiff the duty of boxing the shaft. It cannot be successfully contended that the shaft placed near the floor with the screw projecting was unsuitable for the purpose. The evidence was uncontradicted that such a device was in ordinary and common use and preferable to any other. The fact that the collar could be secured to the shaft without a projecting screw or nut, was not evidence from which a jury would be warranted in finding that the defendant was not justified in using the device which he had in his shop. We fail to see any evidence that there was a breach of any duty on the part of the defendant which he owed to the plaintiff."

In *McGuerty* v. *Hale*, 161 Mass. 51, the plaintiff, a boy of eighteen, had his arm caught in the unguarded gearing of a machine, but as the gearing was in plain sight, it was held that there was no absolute duty on the part of the defendant to cover it.

In *Wilson* v. *Mass. Cotton Mills*, 169 Mass. 67, the plaintiff's hand was caught between two unguarded revolving wheels of a machine used for hoisting and piling cotton, and the court said: "Nor do we see any evidence that the machine was defective. So far as we see, all parts of it were in perfect working order. Even if the

accident would not have happened had the cog-wheels been covered, this would not make the defendant liable as he was not bound in law to cover them." See also *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; and *Shanny* v. *Androscoggin Mills*, 66 Maine, 420.

It is further contended that the defendant negligently allowed waste scraps of iron and steel to accumulate on the floor and obstruct the passage of the helpers in the vicinity of the cog-wheels. It appears in evidence that when the bar from which angle-iron was to be cut, was not perfectly square, or of the proper shape at the end, a small scrap would be cut off to secure the angle desired; and that in the ordinary operation of the machine in the course of the day a dozen small pieces might thus be trimmed off and fall to the floor at the foot of the inclined groove. But there is no evidence that it was necessary to trim the end of the bar for every angle-iron that was to be cut. It is not shown that any such trimming had in fact been done on the morning of the accident, and the case fails to disclose any evidence whatever that there were any such scraps or other waste material on the floor at the time of the accident. Whether, therefore, a failure to establish or enforce a regulation for the removal of scraps similar to the debris around a blacksmith's forge, could be held negligence; and if so, whether it must be deemed the negligence of a fellow-servant, it is unnecessary to consider. There is no evidence of their existence at the time in question.

The claim that the projections above the floor of the bottom flange of the machine, and of the bolts and nuts by which it was fastened to the foundation, was a negligent obstruction, must be considered hypercritical and untenable. The machine was firmly secured to the floor in the ordinary way. There was no occasion for the helper to come in contact with that part of it. His pathway was around it and not over it. It is furthermore wholly improbable that this could in any event have been the cause of the accident; for if he had tripped and stumbled over that part of the machine, he must have fallen before reaching the cog-wheels.

Finally, it is contended that the defendent failed in its duty to

the intestate in not giving him positive and specific instructions in regard to the danger connected with the revolving cog-wheels. It appears that on one occasion while standing near a punching machine a general admonition was given him by the fitter "to look out for himself around the machinery;" but it is admitted that no special warning was given him respecting the danger of coming in contact with the cog-wheel gearing.

It is the opinion of the court that, upon the facts disclosed by the evidence in this case, the defendant was not bound to give such information or warning. The obligation resting upon the employer to give the laborer such instructions as are reasonably necessary to enable him to understand the perils to which he is exposed, must be considered with reference to the reciprocal obligation resting upon the laborer to exercise the senses and faculties with which he has been endowed in order to discover and comprehend these perils for himself. He is not bound to inform the laborer of what he already knows, or what by the exercise of ordinary care and attention, he might have known.

In *Ciriack* .v. *Merchants' Woolen Co.*, 146 Mass. 182, a boy twelve years of age became entangled in the gearing of cog-wheels and was injured. At the first trial, in the absence of testimony upon that point, the boy was presumed to be of average intelligence and the court said: "His injuries arose from coming in contact with the revolving cog-wheels of the machine, and the instruction which he was entitled to receive must therefore have been concerning the danger from that cause; but it seems to us that it must be fairly assumed that the plaintiff had all such knowledge as it was the duty of the defendant to impart to him. , There was no peculiar or secret source of danger; anybody seeing the machine in motion must soon become aware of the danger which would arise from coming in contact with it. In order to show actionable negligence on the defendant's part, it was incumbent on the plaintiff to show an omission to inform him of something which he needed to know in order to be safe. In absence of anything to show the contrary, the plaintiff must be assumed to have the intelligence and understanding which were usual with the boys of his

age. There is nothing to show that he did not know the danger of coming in contact with the revolving wheels of the machine. It must be assumed that he was well aware of it. The accident happened in consequence of his omitting to guard against a known peril. He had been employed in the same room for a period of nearly two months. There is no reason to suppose that explicit instructions if given to him, at the beginning of his employment, with reference to the danger of touching these wheels when in motion, would have added anything to what he himself must fairly be presumed to have known at the time of the accident." See also *Coullard* v. *Tecumseh Mills*, 151 Mass. 85; *Ruchinsky* v. *French*, 168 Mass. 68; *Wilson* v. *Mass. Cotton Mills*, 169 Mass. 67; and *Tinkham* v. *Sawyer*, 153 Mass. 485.

It has been noted that, in the case at bar, the situation and character of the powerful machine in question were such that all employees in the building, seeing and hearing it in motion, must be at once impressed with a sense of its danger as well as of its power. The peril of coming in contact with the cog-gearing was neither peculiar nor concealed but obvious and familiar. The intestate was not a lad of tender years, but a youth who had just entered upon his eighteenth year. In addition to the presumption of average intelligence it affirmatively appears from the testimony of his mother and of the fitter, that he was "bright and intelligent," and "handy and industrious." He had been at work a full month in his capacity as helper and thus frequently brought into proximity to the angle-iron machine. He clearly had the opportunity to observe the revolving cog-wheels from day to day, and the capacity to comprehend the danger of coming in contact with their gearing. He had all the information upon that subject which could have been derived from the most elaborate instructions.

But if any failure of duty on the part of the defendant had been shown, there is another principle of law decisive of the plaintiff's case, to which the considerations last presented are equally applicable. The law is now familiar and well settled that if a laborer continues in the service of his employer after he has knowledge of the defective, unsuitable or unguarded condition of

any machinery in connection with which he is required to labor, and it appears that he fully comprehends and appreciates the nature and extent of the danger to which he is thereby exposed, he will be deemed to have waived the performance of the employer's obligation to furnish safe and suitable appliances, and to have voluntarily assumed all risks incident to the service performed under such circumstances. Such an assumption of the risks of an employment by a laborer will bar recovery independently of the principle of contributory negligence. *Conley* v. *American Express Co.*, 87 Maine, 352; *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400; *Miner* v. *Connecticut River Railroad Co.*, 153 Mass. 398; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396.

No reason has been shown in the case at bar why the intestate was unable to comprehend and appreciate the danger of coming in contact with the cog-wheel gearing in the defendant's shop, and all the evidence tends to show that he had the opportunity and capacity to comprehend and appreciate it. He must, therefore, be deemed to have assumed the risks of the service which he performed.

Furthermore, it has been an established principle of substantive law since its enunciation in the leading case of *Butterfield* v. *Forrestor*, 11 East, 60, that there can be no recovery for injuries suffered by one person from the negligence of another if the injured person by his own want of care contributed to produce the injury; and in this state since the decisions in *French* v. *Inhab. of Brunswick*, 21 Maine, 29, and *Kennard* v. *Burton*, 25 Maine, 39, it has also been the recognized and firmly established rule of evidence of governing the burden of proof, that the plaintiff must establish the fact affirmatively, as a necessary part of his case, that at the time of the accident he was in the exercise of due care. This rule was reaffirmed in unqualified terms in *Gleason* v. *Inhab. of Bremen*, 50 Maine, 222, and carefully analyzed in its application to facts analogous to those at bar, in *State* v. *Me. Central R. R. Co.*, 76 Maine, 357; and *Chase* v. *Me. Central R. R. Co.*, 77 Maine, 62. The doctrine has also been critically reviewed and forcibly illustrated in the lucid opinion of the court in the recent case of *McLane* v. *Perkins*, ante, p. 39.

Like all facts, which are the subject of judicial inquiry, the plaintiff's freedom from contributory negligence, though it must be established affirmatively, may be proved by all kinds of legitimate evidence whether direct or circumstantial.   But as stated in the case last cited:   "It is not to be presumed.   If sought to be established by inference, it must be by inference from facts in evidence in the case.   It cannot be inferred from general conduct, nor from the habits or instincts of mankind, nor from the argument that men are likely to be careful in danger.   It is as true that men are careless, as that they are careful.   It is as true that men negligently contribute to their own injury as that they do not."

In the case at bar, if culpable negligence on the part of the defendant had been shown, the total absence of any evidence showing affirmatively that the plaintiff's intestate was in the exercise of due care at the time of the accident, must be held a bar to the plaintiff's recovery.   The intestate was not merely passive in the defendant's care at the time of the injury, like a passenger in his seat in a railway car at the time of a collision.   He was himself in the exercise of an active agency of his own, involving the right and duty to regulate and control his movements in such manner that no want of care on his part should contribute to his injury.   Whether in fact he was reasonably attentive and alert to avoid unnecessary contact with the dangerous machinery, or on the other hand was momentarily thoughtless and inattentive at the time of the accident, does not appear in evidence.   No person saw the accident itself and no witness has informed the court how it happened that the boy was entangled in the powerful gearing.   Whether, as suggested by the plaintiff, he slipped or stumbled in his walk and was thus precipitated against the wheels; or thoughtlessly went so near the gearing that his clothing was caught by the cogs, or from mere curiosity was experimenting with the action or strength of the gearing, is all a matter of conjecture.   Only the painful and shocking result is known.   True, the case does not show affirmatively that the plaintiff's intestate was guilty of contributory negligence; but it fails to show affirmatively either by direct evidence, or by legitimate inference from any evidence in the case, that he was in

the exercise of due care and did not negligently contribute to the injury. This deficiency in the proof would alone be fatal to the plaintiff's action.

*Motion sustained.    Verdict set aside.*