## PHOENIX PRINTING CO. v. DURHAM.

No. 1564.    Opinion Filed February 6, 1912.

Rehearing Denied April 9, 1912.

(122 Pac. 708.)

1. **MASTER AND SERVANT—Injury to Servant—Negligence of Master.** While under section 6, of article 23, of the Constitution, contributory negligence and assumption of risk are questions of fact to be submitted to the jury, this section does not apply to the primary negligence because of which a recovery is sought, and where there is no evidence reasonably tending to show that a defendant is guilty of negligence, it is error for the trial court to submit the issue to the jury.

2. **SAME—Presumption of Negligence.** In an action by an employee against his employer, the fact of accident carries with it no presumption of negligence on the part of the employer, but such neg-

ligence is an affirmative fact for the injured employee to establish by the evidence.

3.    SAME—Use of Machinery—Presumptions.  A master has some discretion concerning the kind of machinery which he will use. He may use new or old machinery as he likes.  He may use an old pattern or a new one as he pleases, provided the machinery, which he uses is sound and performs the work which it was designed to do, and mere proof that he is using machinery of a certain kind, and that an accident happens in the use of it, does not tend to show negligence, unless it is coupled with some evidence—not mere speculation—that it is not properly performing its function.

4.    SAME—Evidence.  The evidence examined, and held insufficient to justify the submission of the case to the jury.

(Syllabus by Ames, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Wiley B. Durham against the Phoenix Printing Company.  Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*J. B. Furry* and *P. L. Soper,* for plaintiff in error.

*Bailey & Wyand* and *Chas. A. Moon,* for defendant in error.

Opinion by AMES, C.  The question involved in this case is whether or not the trial court should have sustained the defendant's motion for a directed verdict.  In order to determine this question it is necessary to clearly state the facts.  The plaintiff was a bright, capable young man, about 20 years of age, who had been employed by the defendant a number of months, the last five or six of which were in the capacity of assistant pressman.  The defendant was engaged in the business of printing a daily newspaper in the city of Muskogee, and in its business operated a sixteen-page Goss Rotary press.  This press included amongst its parts, two heavy rolls or cylinders, running parallel with the floor, one placed immediately over the other and revolving toward and so close to each other as to carry a sheet of paper when started through.  The press was so con-

structed as to print a four, eight, twelve, or sixteen-page paper without the attachment, the use of which is alleged to have caused the injuries in this case. In printing a six, ten, or fourteen-page paper, it was necessary to use this attachment, which is termed in the evidence a "paster," and the purpose of which was to paste on the extra sheet as the sheets passed through the press. At the time of the injury the paster was in use, and the injuries occurred by reason of the use of it. The paster consisted of two parts, one a paste box, in which the paste was placed, and the other a small disc or wheel, one edge of which revolved through a slit in the paste box, and the other touched one of the large cylinders so lightly as not to tear the paper as it passed through. This disc, revolving through the edge of the paste box, would carry the paste to the paper as it passed over the cylinder. The disc was run by friction; that is to say, its edge was placed so close to the large cylinder that as the large cylinder revolved its contact with the face of the small disc would cause it to revolve. The paste box was removable. When it was in use it was fastened on a small rest, just in front of the upper cylinder, by means of set screws, which were screwed into it from the bottom. When the extra sheet was not being used, this paste box would be removed entirely. When the paste box was set too close to the large cylinder, naturally the small disc, constituting a part of the paster, would tear the paper, and when the paste box was set too far from the large cylinder, the contact would not be made and the paste would not be applied. For this reason it was necessary to adjust the paste box accurately and to keep it properly adjusted by loosening the set screws and moving it nearer to or further from the large cylinder. The heads of the set screws holding the paste box were octagonal in shape and were adjusted with a wrench. The plaintiff was injured while in the act of adjusting this paste box with the machinery in motion. As he did so, the wrench slipped off the head of the set screw, and as he was pressing his hand toward the rolls when the slip occurred, his hand pressed in between the

rolls and was drawn through and crushed so badly that his arm had to be amputated about two inches above the elbow.

The negligence alleged by the plaintiff is that the defendant should have propelled the paster by means of a shaft and pulley, instead of contact or friction, and that a brake should have been provided to stop the rolls more quickly. There was no evidence tending to show that the latter was practicable, but the evidence showed that there was an attachment provided by the manufacturers of this press by which the paste wheel or disc was propelled independent of friction. This attachment consisted of a shaft and pulley, operated with a belt, which kept the paste wheel revolving independent of its contact with the cylinder. This press had been in use by the defendant about two years, during which time this attachment had never been used; but after the accident it was put into use. It also clearly appears from the evidence that this belt and pulley merely operated in the disc or paste wheel, and did not in any way touch the paste box. This same press had been used in Oklahoma City prior to its use in Muskogee. When in use there the pulley and belt were attached, and the evidence is uncontradicted that during that time it was necessary to adjust the paste box in the same manner above described, and that it had to be done practically every time it was used.

The evidence fails wholly to show that there was any defect in the machinery used, or that there was any element of unsafety in the place where the work was done; but, on the contrary, it affirmatively shows that the management of the defendant had at all times furnished to the pressman and his assistant every facility and convenience requested by them, and that no request for a change in the method of this attachment had ever been made. The evidence also affirmatively shows that, in adjusting the paste box by means of this octagonal set screw, the pressman could exert his force parallel with the cylinders, instead of perpendicular to them. The paste box, the set screw, the wrench, and the cylinders were all in good condition, and there is no explanation of the accident further than that the wrench slipped

off the head of the set screw, and plaintiff's arm, by reason of its own force, went into the rolls.

The defendant's answer consisted of a general denial, a plea of contributory negligence, and a plea of the assumption of risk. At the close of the evidence the defendant requested the court for a peremptory instruction, which was overruled, and the jury returned a verdict for the plaintiff for $2,750. The accident occurred after statehood.

While it is manifest that these injuries resulted from a risk assumed by the plaintiff, it is not necessary for us to consider that aspect of the case, in view of the conclusion we have reached upon the motion to direct a verdict.

Under section 6 of article 23 of the Constitution, the defense of contributory negligence and of assumption of risk must be submitted to the jury. Whether the court should sustain a motion for new trial, where the jury has manifestly found against the law and the evidence on these issues, is a question which we need not now determine.

The law, however, does not require the primary question of the defendant's negligence to be submitted to the jury unless there is evidence reasonably tending to support the plaintiff's burden of proof on this subject. If the evidence reasonably tends to show that the defendant is negligent, then these defenses must be submitted to the jury. But until the evidence reasonably tends to show negligence on the part of the defendant, there is no issue which should go to a jury. *Solts v. Southwestern Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776.

It is likewise true that as between master and servant the fact of accident carries with it no presumption of negligence. In the Solts case, just cited, the court quotes on this point from the Supreme Court of the United States, in *Patton v. Texas, etc., R. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361:

"The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. * * * It is not sufficient for the employee to show that the employer may have been guilty of neg-

ligence; the evidence must point to the fact that he was. * * * If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony."

Bearing in mind that the machinery used by the defendant was all in good condition and performing its work in the usual and customary way, and that the evidence failed to show that a brake was practicable, the inquiry arises whether the mere fact that the master chose to operate this machinery in the manner in which it was operated, and in which it had been safely operated for two years, was sufficient evidence on which to permit the jury to find that the master was guilty of actionable negligence. In this connection it must be borne in mind that the use of the belt and pulley would not have affected the paste box, and that it would have been necessary to adjust the paste box in the same manner.

A master has some discretion concerning the kind of machinery which he will use. He may use new or old machinery as he likes. He may use an old pattern or a new one as he pleases, provided the machinery which he uses is sound and performs the work which it was designed to do, and mere proof that he is using machinery of a certain kind, and that an accident happens in the use of it, does not tend to show negligence, unless it is coupled with some evidence—not mere speculation—that it is not properly performing its function. Machinery is unsafe. It is not the master's duty to furnish safe, but sound machinery. Such a rule would destroy all manufacturing, because no machinery is safe. The master's duty to exercise reasonable care to furnish his employees a safe place within which to work does not mean that he must furnish safe machinery according to the opinion of the court or jury, but that he must keep the appliances and places which he does furnish in a reasonably safe condition.

In *Richards v. Rough*, 53 Mich. 212, 216, 18 N. W. 785, 787, the court says:

"A manufacturer must be permitted to choose the machinery he desires to use, and to control his business in his

own way, provided he does no unlawful act. He may use new or old machinery, according to his liking, and if it is sound, well made, and kept in repair, he will not be liable for an accident occurring to an employee using it, so long as the only cause alleged is that there is a better and safer kind of machinery used for the same purpose."

In *Boyd v. Harris,* 176 Pa. 484, 35 Atl. 222, it is said:

"This case presents a question, the importance of which extends far beyond the present parties and the judgment to be entered herein. It is whether the location of the permanent structures along a line of railroad necessary to accommodate its business is to be determined by the railroad company or by a petit jury. If the former, they may be located with reference to the convenient and economical use of the railroad and the accommodations of its traffic. If by the latter, these considerations will be lost sight of and the proper location will be a shifting one, to be settled by each successive jury in accordance with its own notions and the peculiar features of the case on trial. One jury may hold a given location to be safe and proper. The next jury may hold it to be unsafe and therefore improper."

In *Bethlehem Iron Co. v. Weiss,* 100 Fed. 45, 50, 40 C. C. A. 270, 274, it is said:

"The so-called rule of a reasonably safe place, in order to be fitted·into the structure of the law of master and servant, must be so limited and qualified by these other rules to which we have been referring as not to be inconsistent with them; otherwise, it cannot be recognized as a rule of law. It cannot be permitted to sanction the turning over to a jury the determination in every case of what is 'a reasonably safe place,' and thus substitute its varying judgment as to how a business must be carried on, for the lawful judgment of the owner or manager, who may have performed his duty in the premises, as prescribed by the well-established rules of law above adverted to."

The first paragraph of the syllabus in *Cunningham v. Bath Iron Works,* 92 Me. 501, 43 Atl. 106, is as follows:

"While it is the duty of the master to exercise ordinary care and foresight in providing safe machinery and a reasonably safe place in and about which the helpers and other laborers are required to work, yet the fulfillment of this duty must be tested by the·experience of employees who are themselves in the exercise of due care and vigilance, and not with reference to those who are themselves negligent or venturesome or the unfortunate

victims of simple and unaccountable accidents. Absolute safety is not guaranteed to the laborer by the contract of employment."

In *C., R. I. & P. R. R. Co. v. Lonergan,* 118 Ill. 41, 7 N. E. 55, it is said:

"An employee who engages in the service of a railway company in the running of its trains is presumed to do so with a knowledge of the dangers incident to such service, and he assumes the risks of its ordinary hazards. An employer is not bound to furnish for his workmen the safest machinery, nor to provide the best methods for its operation in order to save himself from responsibility from accidents resulting from its use. If the machinery be of an ordinary character, and in sound repair, and such as can with reasonable care be used without danger to the employee this is all that is required."

In *Young v. Burlington Wire Mattress Co.,* 79 Iowa, 415, 417, 44 N. W. 693, 694, the court says:

"But defendant is not required to use appliances so constructed that no injury can be inflicted by them under any circumstances. They must provide for their employees such appliances, so constructed, that they may be used, in the exercise of due care, with reasonable safety; and danger and injury must not result from the defects in or the defective construction of the appliances, considered in view of their use."

In *Roth v. Northern Pacific Lumbering Co.,* 18 Ore. 205,

"When it is not unlawful, and does not interfere with the rights of others, it is the legal right of every person to carry on a business which is dangerous in itself, or in the manner of conducting it. He may select the machinery to be used, and conduct the business in the manner he deems best, and, as Ellsworth, J., said, 'run his mill with old or new machinery, just as he may ride in an old or new carriage, navigate an old or new vessel, occupy an old or new house, as he pleases.' *Hayden v. Mfg. Co.,* 29 Conn. 558. Within the same principle, so long as the law does not require it, the master is not bound to box or fence his machinery in running his mill and conducting his business, and merely a failure to do so will not render him liable for neglect."

In *Southern Pacific Co. v. Seley,* 152 U. S. 145, 14 Sup. Ct. 530, 531, 38 L. Ed. 391, the court quoted with approval the following language of the Supreme Court of New York in *Sweeney v. Envelope Co.,* 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722:

"The defendant could not be required to provide himself with other machinery · or with new appliances, nor to elect between the expense of doing so and the imposition of damages for injuries resulting to servants from the mere use of an older or different pattern. In the absence of defective construction, or of negligence or want of care in the reparation of machinery furnished by him, the master incurs no liability from its use."

The case at bar is very similar in principle to *Solts v. Southwestern Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776, *supra*. That was a case in which the plaintiff had his leg cut off by a cotton seed conveyor at the mill of the defendant. The previous year this conveyor had been permanently covered by an iron grating, while at the time of the injury this grating had been cut into sections, which could be lifted in order to shovel the seed directly on the conveyor. All the machinery was in good condition, and the danger was perfectly obvious to any ordinary intelligence. The court directed a verdict for the defendant, and on appeal that verdict was affirmed over the plaintiff's argument that the change of method of handling the seed was evidence from which the jury might find that the defendant was negligent in providing a safe place in which to work. There the defendant might have operated with the open conveyor, or with the covered conveyor, and the effect of the court's holding is that it was a matter of the defendant's choice, and that in the absence of an affirmative showing of some defect in the method of operation, or in the machinery used, there was no negligence, and therefore nothing to submit to the jury.

Here the defendant might have used the pulley or it might not have used the pulley, and whether or not it should use it was a matter of opinion. If the mere failure to use it is sufficient to send the case to the jury, then the use of it would likewise be sufficient to send the case to the jury, and one jury might find that the failure to use it is negligence, while the next jury might find that the use of it is negligence, and the result would be that question of negligence would be left to the mere caprice of the jury, and the plaintiff would never have to prove anything more than the nature of the machinery used and the accident,

and the jury might determine then, according to its own judgment, whether the defendant was negligent in the use of the particular machinery involved. Such a condition of the law would· be intolerable, and no manufacturer could ever tell whether he was negligent or not, as the judgment of his most highly trained engineers might not concur with the judgment of a jury. As was said in *Chicago & E. I. R. Co. v. Driscoll,* 176 Ill. 330, 335, 52 N. E. 921, 923:

"A verdict is not a precedent, and is not binding on another jury. One jury might find the construction a proper one, while another jury might find it an improper one, and the important engineering question of the manner of constructing a railroad would thus be left to the varying and uncertain opinions of jurors."

This case furnishes a very persuasive argument in favor of a workman's compensation law, but does not justify us in following our sympathy into a path perpendicular to the pathway of the law.

For the reasons herein stated, we think the judgment of the trial court should be reversed and remanded.

By the Court: It is so ordered.