## CHICAGO, R. I. & P. RY. CO. v. DURAN.

No. 2645.    Opinion Filed July 22, 1913.

Rehearing Denied September 9, 1913.

(134 Pac. 876.)

1.  **NEGLIGENCE—"Actionable Negligence."** To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.

2.  **SAME—Trial—Submission of Issues—Conformity to Evidence—Evidence.** Under section 6 of article 23 of the Constitution (section 355, Williams' Ann. Const. Okla., the question of contributory negligence or assumption of risk in all cases is a question of fact at all times to be left to the jury, but this provision does not relieve the party suing for damages for an alleged injury from the burden of proving that the injury was the proximate result of negligence on the part of the party sought to be charged.

    (a)  Where there is no evidence reasonably tending to show that such party sought to be charged was guilty of negligence, it is error for the trial court to submit such issue to the jury.

3. **MASTER AND SERVANT—Injury to Servant—Negligence— Burden of Proof.** As a rule the fact of an accident or injury to an employee in the course of his employment carries with it no presumption of negligence on the part of the employer.

(a) That the injury or accident was the result of the negligence of the employer is an affirmative fact for such employee to establish by the evidence.

4. **SAME—Duty of Master—Safe Appliances—Safe Place to Work— Assumption of Risk.** A master is required to exercise proper care and diligence to provide his employee with a reasonably safe place in which to work, with reasonably safe material, tools, and implements with which to work, with reasonably safe material upon which to work, and suitable and competent fellow servants.

(a) When the master has so discharged these duties, at common law the servant assumes all the risks and hazards incident to the particular employment or to the performance of the particular work, including those risks and hazards resulting from the negligence and carelessness of his fellow servants.

(b) In this state the doctrine of assumption of risk as it existed at common law as to railroads, street railways, interurban railways, and mining operators has been modified; such employees not assuming the risk incident to the negligence of their fellow servants. Section 254, Williams' Ann. Const. Okla.

(c) A further modification in all cases whatsoever in this state exists in that the defense of assumption of risk and contributory negligence is in all cases a question of fact to be left to the jury for their determination.

5. **SAME—Assumption of Risk—Question for Jury.** Where the master has omitted no duty as such and therefore is free from negligence, no liability attaches to him, as "every risk which an employment involves after a master has done everything that he is bound to do for the purpose of securing the safety of his servants is assumed as a matter of law by each of the servants."

(a) When the question is that the injury to the employee resulted from an assumed risk which an ordinarily prudent employer would not have exposed the servant to, thereby presenting a question of a breach of duty on the part of the master, and the defense being interposed that the employee, with the knowledge of such omission of duty, entered the employment of the master, expressly or impliedly assuming all the risks resulting from such omission of duty, such omission of duty on the part of the master not having been done in violation of a statute the question as to whether the employee assumed the risk under section 6, art. 23, of the Constitution (section 355, Williams' Ann. Const. Okla.) is "a question of fact" to "be left to the jury for its determination."

(b) Where a master omits to perform a duty and such omission constituting a violation of the law, though the employee expressly or impliedly contracted to assume the risks resulting from such violation, still the servant did not assume the risk of such injury, as a contract under such state of facts to assume such risk would be void as against public policy.

6.  NEGLIGENCE—Carriers—Proximate Cause—Actionable Negligence—Delay in Delivery of Goods.  As a rule a party guilty of negligence or an omission of duty should be held responsible for all consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact exist, whether they ·could be ascertained by reasonable diligence or not, would have thought at the time of the negligent àct as reasonably possible, to follow, if they had been suggested to his mind.

(a) An agent of C. at L. advised D. that he could procure employment as a bridge carpenter from C. at a certain point, to wit, S.  D. had had experience both as a bridge carpenter and ·section hand.  D. shipped his trunk, containing his carpenter tools and carpenter credential certificate to S., expecting to there enter the employment of C. as a bridge carpenter.  On reaching S., his trunk not having arrived, he engaged in the service of C., as a section hand, and whilst engaged in such work, in construction of ballast on such road, by a piece of ballast rock striking him in the eye, he was injured.  Held, that the injury was not the proximate result of the failure of C. to promptly deliver D.'s trunk at S.

7.  MASTER AND SERVANT—Injury to Servant—Sufficiency of Evidence—Negligence.  Evidence examined, and held not to show any negligence on the part of the railroad company.

(Syllabus by the Court.)

*Error from District Court, Pottawatomie County;*
*Roy Hoffman, Judge.*

Action by L. Duran against the Chicago, Rock Island & Pacific Railway Company.  Judgment for plaintiff, and defendant brings error.  Reversed and remanded, with instructions.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *J. H. Woods,* for plaintiff in error.
*H. H. Smith* and *W. T. Williams,* for defendant in error.

WILLIAMS, J. The defendant in error, as plaintiff, sued the plaintiff in error, as defendant, for damages on account of an inquiry alleged to have resulted from said defendant's negligence, wherein judgment was rendered in favor of the plaintiff as against the defendant for $1,500. The parties will be herein referred to in the style in which they appeared in the lower court.

The allegations of the petition are in part as follows:

"Count 1: * * * This plaintiff was engaged in the service of the defendant at or near * * * working as a section hand, and engaged with others in repairing defendant's said roadbed and keeping the same in a good state of repair * * * under an oral direction and hiring of defendant's local agent. * * * That said oral hiring consisted in said local agent directing this plaintiff to work. * * * That at the time of the injury, as hereinafter alleged, plaintiff was engaged in tamping and driving ballast under the ties of defendant's said track on and along said section * * * for the purpose of leveling said track. That defendant had been furnished and supplied hard, sharp, flinty quartz for such ballast. That on the day plaintiff was injured, as hereinafter alleged, one of defendant's passenger trains on said road was due to pass that part of defendant's said road in a short time; and, a piece of the road being in need of repairing and leveling up, defendant's said section foreman ordered and directed this plaintiff to hurry and repair said track before said train should arrive. That in pursuance of said order this plaintiff made haste to level said ties and track by tamping and driving such ballast under said ties with a steel pick, or other instrument furnished by defendant to this plaintiff for such purpose, and this plaintiff, being inexperienced at such work, and not knowing the danger and hazard of such work and the liability of such rock to splint off and fly as it did, made haste to carry out the order of said Murray and tamp and level said track for said train to pass, and in doing so drove and tamped said rock under said ties with great force and rapidity, and while so doing a piece of rock, or a bit of steel off the pick in plaintiff's hand or the hands of some of his colaborers, was driven with great force into plaintiff's left eye and cut and de-

stroyed plaintiff's said eye, and plaintiff has been totally
blind thereof ever since. * * *"

In count 2 it is in substance alleged: That because
he had been sent by the defendant, its agents and servants,
to the point where this injury occurred to work in a bridge
gang and pursue the line of employment which he had
formerly engaged in, and relying upon the direction and
promise of the defendant, its agents and servants, he pro-
ceeded to said point, having shipped his tools and creden-
tial letter over the defendant's road, which credential letter
was such a passport and authority as would cause the agents
and servants of said defendant to give him employment with
the bridge gang, but when he reached said point the de-
fendant failed to deliver his trunk which he had sent by
freight in which was contained said credential letter and
tools.    That, on account of a lack of funds to pay board
and sustain himself until his trunk arrived, he took employ-
ment from said defendant as a section hand, being unac-
quainted with such work and without the knowledge of
the extra hazard of said employment, which inexperience was
known to the defendant, but with such knowledge defend-
ant failed to give him proper warning of the peril accompany-
ing such employment.

The evidence offered to sustain the allegation of the
plaintiff is, in substance, to the effect that the plaintiff was
51 years old, carpenter by trade, having worked at bridge
work for about four years; that he was sent to Stuart, the
point at which he was injured, by defendant's agents; that
he went to work as a section hand, having expected to do
carpenter work when he came to Stuart; that he had worked
as a section hand on the I. C. Southern and I. C. Valley
roads prior to that time.    He testified, also, specifically as
follows:

"Q.    Now, just explain to the jury; just tell the
jury how you came to get hurt.    A.    Well, we were going
over the road, as is usual for section men to do, inspecting

the road, and we found a place dangerous, and, a train then being overdue, we put the car off and went to work rapidly to repair it, and as we pulled the track up we heard the train whistle east of us, probably at a crossing, probably at a little mill, the other side of the crossing, and was probably two or three miles away; and we worked as fast as we could, using any kind of material we could get to make the track safe to carry that train over, and the second tie I tamped, something flew and struck me in the eye—Q. Who gave the orders to fix that particular— Mr. Roberts: We object— Q. Well, did anybody give you orders? A. Mr. Murray did. He said, 'Boys, let's hurry up and get this fixed up before the train comes,' or some words to that effect. Q. Do you know what struck you in the eye? A. Well, I could not say positively what struck me in the eye, but I think it was— Q. Well, Mr. Duran, state whether you got anything out of that eye or not? A. Yes, sir. Q. What was it? A. Well, it looked like rock; this rock when you struck it flew to pieces, and something struck me in the eye, and of course I thought it was the rock. Q. Was that the kind that you were tamping in at the time you were injured? A. Yes, sir."

He further testified that the work he was then doing was regular section work; that he did construction work on the I. C. Southern and I. C. Valley roads, straightening and ballasting track; he ballasted nine miles to a level of eighteen inches with ballast above the original grade; ballasted eight miles on the I. C. Valley in a period of three months while he was widening, building up track, grading, putting in ties and rails and getting track ready for train service; he was familiar with ballasting, raising track, and filling; worked something less than a year on the two roads; tools used were tamping picks, the same general class of tools that he was using when injured on the Rock Island near Stuart; heard the train east of where he was working, near the end of the section; had worked on this particular section before; trains were going back and forth every day; track was soft on account of the rains; did not remember whether trains had passed over this track prior to 10:30 a. m.; trains did not

run regularly on account of the washouts; no signs along the track to stop the trains; did not know about the use of the track by trains on the previous day, but knew it was used with safety. He further testified specifically as follows:

"Q. What portion of the roadbed were you standing on when you were tamping this particular piece of rock? A. I was standing on the south side of it. Q. South side, outside the rail? A. Yes, sir; I was tamping under the tie outside the rail. Q. Which way was you facing? A. East. Q. Which way were you striking the rock? A. I was striking it to me; we had to pull the rock under the tie. We had to pull it up and get something under there to make it safe and solid, and you have saw them use tamping picks, I suppose. The rocks are out here and you drag them under the tie like this and strike them with the tamp and drive them under. Q. Then you were facing east? A. Yes, sir. Q. And standing on the south side of the track? A. Yes, sir. Q. And striking the rock so it would be driven towards you, and towards the west? A. Yes, sir. Q. And that you drive the rock under the tie? A. Yes, sir. Q. And you were standing directly above the tie? A. Yes, sir. Q. And you struck a piece of rock there, and the rock broke, and something hit you in the eye? A. Yes, sir. Q. You did not notice anything in particular about the rock before you struck it? A. I know it was a white flint rock; I did not have any time to think. Q. You were simply driving the rock in under there, under the—A. End of the tie. Q. Yes, you are sure it was a piece of the rock that struck you in the eye? A. No, I don't know it was, because I could not tell. When I struck the rock flew to pieces, and of course I thought it was a piece of rock, and I taken rock out of my eye, and that is the only thing I have got to judge from as to what it was. That is all."

Rogers Leonard testified as follows: Had been engaged in railroading and track work 41 years; worked on N. Y. & H. R., on C. & A., Ohio & Mississippi, and 33 years on the "Katy"; had been ballasting track about 30 years; some ballasted with cinders, some gravel, some rock, some with white limestone; all limestone has a little scaly rock in it; now employed on the Rock Island at Stuart, where he was on June, 1908; saw

plaintiff and knew him when he was injured; white limestone was used at that place; white limestone is proper ballast; all of it has a little scale of rock; sample exhibited
to him; was not improper rock to ballast; when plaintiff was
injured they were tamping track with white limestone; occasional patch of cinders; rock was placed in the soft places;
no cinders where the accident occurred; plaintiff said something struck him in the eye when witness saw him immediately
after the accident; ballast used there was white limestone; all the
same kind; occasionally a small shale of slate was found in
it; no particular orders were given as to the need of the
work; they were raising centers and low joints; were not
preparing the track for any special train at any given time;
no flint rock put in this track at this place; there had been
a pile of stone on the curve ever since he had been there,
for four years; were raising an angle-bar joint, which was low;
were leveling it up; had worked on this about ten minutes
when Duran was hurt; tamping ballast under the ties; flint
is harder than limestone; had found occasional pieces of flint
rock in the limestone ballast used on the "Katy," on the
Kansas City & Memphis, on the Birmingham; find a little
scale in all limestone.

James Murray testified, in substance, as follows: That
he was section foreman for the Rock Island in June, 1908,
doing general track work, surfacing and lining the tracks near
the town of Stuart; plaintiff was working for him in May
and June, 1908; applied to him for work on the 20th and
was employed on the 21st; some ballast on that section;
white limestone is used except in a very few places, where
cinders are used to fill in; only one kind of stone ballast
used; occasionally find a piece of rock similar to the one
shown to him in limestone ballast; had seen the same white
limestone ballast on the Santa Fe; had worked for them
a couple of years at Tecumseh, Sewell, Seland, and Norman
on the main line, where the same kind of white limestone

ballast was used as was on the Rock Island, where the plaintiff was hurt, and that occasional pieces of the harder rock and scaly rock would be found in it; Duran was hurt near the east end of the section; men in the section gang were about a half rail apart to be out of one another's way; when plaintiff said his eye was hurt, witness looked in it but could see nothing; it was inflamed and watering; he tied a handkerchief over it and went and sat in the shade for a while and came back and worked the rest of day; did not work the next day; urged plaintiff to go to hospital; he said he would wait until the next morning; witness told plaintiff he would have to go to hospital, where he eye could be treated; plaintiff went on Sunday, after Friday, the day of the accident.   Only one kind of rock ballast on his section, white limestone; nothing unusual in the work on this day at this place; same kind of work that was being done every day, surfacing, lining, leveling the joints, and were not preparing the track for any particular train or time; had worked for the Rock Island since June, 1907; had gone over track and smoothed high rails at various places and arrived at the place where they began work about 8 o'clock; left home at 7; worked on this curve all day; graded the curve; local was due in Stuart about 9:30; they were about eight or ten minutes run, by the local's time, from town; did not recall whether the local had passed that morning or not; did not recall the passing of the train on that day; did not recall making a statement to plaintiff, in the presence of Mr. Waters, with reference to being a witness in the case; did not make statements to plaintiff with reference to the character of the track; the hard flinty looking rock is always found in limestone ballast; could not say there were a number of loads of this used; ballast at the point of the accident was about the same as any other point, as nearly as he could tell, where limestone ballast was used; had found only one piece of this harder rock in the ballast; had worked on the

Santa Fe four or five years; never got limestone rock out of the quarry; the rock is crushed after being quarried; knew nothing about the quarrying of limestone; had not placed several car loads of the harder rock near this curve for ballasting; would not call the harder rock dangerous for ballasting; could not say which would be easier to work in, hard or soft; plaintiff went to hospital a couple of days after his injury; stayed all night at his house the day of the injury; wore a bandage all night; did not know whether he went to place where he was hurt or not; did not know whether any one was with him; Mr. Waters was not in town at that time; was building a house in the country; plaintiff did not show the witness any rock which plaintiff said had been scattered on this curve where plaintiff was injured; did not know where Mr. Waters was; always found flinty rock in the limestone ballast that he had worked with; never told plaintiff what his testimony would be in the case; when plaintiff came to stay all night with him said he wanted to see Waters; did not tell Waters that he did not desire to be a witness.

"Q. What did he say to you now, repeat it? A. What I was talking in regard to a moment ago? Q. About helping him out in this case? A. He says, 'Why, you would not do me any good.' I asked why; he says, 'You have got a good job, with the company.' I says, 'That does not matter with me; any time that comes to me there is plenty of jobs like section foreman, and I would not hesitate to tell for a minute what I knew.' "

Stayed all night the next night and said he had been to the place of the accident. Said Waters had been with him.

Plaintiff being recalled, further testified:

"Q. Well, did Mr. Murray say to you that he had no objection to testifying; that he would testify the truth? He said that to you? A. Yes, sir. * * * Q. Did you have any conversation about what he would testify to? A. No, sir."

Got the rock near place where he was hurt; witness Murray said there were five or six car loads of that rock put off

there for ballasting; plaintiff said witness Murray was mistaken about the hours of the trains.

"The Court: As the court recollects your testimony you testified in chief that the foreman of your gang didn't give you a hurry-up order stating that the train was about to come along? A. Yes, sir; he done that. Q. The Court: He did do that? A. Yes, sir. The Court: And he stated that the train was coming and to hurry up? A. Yes, sir. Well, I don't remember exactly the words he said, but he said, 'Boys, let's get this track up before the train comes.' He says, 'It's coming now'; and we heard it whistle at a station or crossing a mile and a half or two miles east of where we were at work, and we had just got up two rails, and we tamped every other tie on one side when the train passed us. Mr. Murray is honest in his recollection but he has forgotten."

The foregoing statement as to the evidence is taken substantially from the brief of the plaintiff in error. Counsel for defendant in error in their brief concede that the same is a fair statement of the same. Further on in their brief they say:

"The case may be a close one; but plaintiff was at work where defendant put him to work, with the tools furnished him to work with and upon material selected and furnished by the defendant, and was working upon the immediate orders and supervision of defendant, was to do the work under special orders, looking to a special end, and was while so doing injured without negligence on his part. He lost an eye and suffered much as a consequence. Defendant suffered no detriment from plaintiff's work; the materials were of defendant's own selection; the tools were its, as well as the mode and speed of doing the work. Defendant had control of the materials, the means and manner of work. The court cannot, upon this record, say as matter of law that plaintiff's injury was an accident; that it happened without human agency. If the court cannot decide as matter of law, then the jury must determine the matter as a question of fact."

The following rule seems to be sustained by all the authorities:

"To constitute actionable negligence, where the alleged wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure."

*C., R. I. & P. Ry. Co. v. McIntire,* 29 Okla. 797, 119 Pac. 1008. See, also, *St. Louis & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072; *Rogers v. Chicago, R. I. & P. Ry. Co.,* 32 Okla. 109, 120 Pac. 1093; *Faurot v. Okla. Wholesale Gro. Co.,* 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136; *Means v. Southern Cal. Ry. Co.,* 144 Cal. 473, 77 Pac. 1001, 1 Ann. Cas. 206.

In *Dewey Portland Cement Co. v. Blunt, ante,* 132 Pac. 659, it is said:

"Defendant earnestly invokes the rule 'in case of an accident to an employee the fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the accident was the result of the negligence of the employer.' *Neeley v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537 [64 L. R. A. 145]; *Solts v. Southwestern Cotton Seed Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708 [38 L. R. A. (N. S.) 1191]. That this is the general rule cannot be controverted. See, also to the same effect, *St. Louis & S. F. R. Co. v. Gosnell,* 23 Okla. 588, 101 Pac. 1126 [22 L. R. A. (N. S.) 892]. But a master is bound to exercise reasonable care and diligence to provide his servant with a reasonably safe place in which to work, with reasonably safe machinery, tools and implements with which to work, with reasonably safe material upon which to work and suitable and competent fellow servants. When the master has so discharged these duties, then at common law the servant assumes all the risks and hazards incident to the particular employment or to the performance of the particular work, including those risks and hazards resulting from the negligence and carelessness of his fellow servants. *Coalgate v. Hurst,* 25 Okla. 588, 107 Pac. 657; *Id.,* 225 U. S. 698 [32 Sup. Ct. 638], 56 L. Ed. 1626. True, in order for the plaintiff to prevail, there must be evi-

dence tending to show primary negligence or a breach of a duty on the part of the defendant. *C., R. I. & P. Ry. Co. v. McIntire*, 29 Okla. 797, 119 Pac. 1008, and authorities cited above."

In the opinion it is further on said:

"In this state the doctrine of assumption of risk, as to railroads, street railways, interurban railways, and mining operators, has been modified; such employees not assuming the risk incident to the negligence of his [their] fellow servants. Section 254, Williams' Ann. Const. Okla. A modification, in that the defense of assumption of risk in all cases whatsoever is a question of fact at all times to be left to the jury, is extended to all masters. Section 355, Williams' Ann. Const. Okla. Where the master has omitted no duty as such and therefore is free from negligence, no liability attaches to him, or, in the language of Labatt, 'Every risk which an employment involves after a master has done everything that he is bound to do for the purpose of securing the safety of his servants is assumed as a matter of law by each of the servants.' But when the question is that the injury to the employee resulted from an assumed risk which an ordinarily prudent employer would not have exposed the servant to, then under section 355, Williams' Ann. Const. Okla., *supra,* such defense, when interposed by the master, is 'in all cases whatsoever' to 'be a question of fact and shall at all times be left to the jury.' Obviously, where the master has omitted to perform no duty required of him by law, and therefore is guilty of no negligence, no defense of assumption of risk is necessary to be pleaded, though such plea be available. *Clemens v. St. Louis & S. F. R. Co.,* 35 Okla. 667, 131 Pac. 169.

Neither was there any evidence introduced on the trial as to the incompetency of fellow servants nor as to the defective character of the tools used. It was the duty of the defendant to use due diligence to keep its roadbed safe for the carriage of persons over the same. This duty could not be delegated to an employee so as to relieve it from liability. If the master undertakes to carry the servant over its railroad, from one place to another, for the performance

of the duties of such servant, it is the duty of the master to furnish a reasonably safe roadbed upon which to carry the servant to his work, and for any neglect of its duty to the servant in so transporting him as a passenger the master is liable to the injured servant. *Anderson v. Bennett,* 16 Ore. 515, 19 Pac. 765, 8 Am. St. Rep. 311; *Miller v. Pacific Company,* 20 Ore. 285, 26 Pac. 70; *Carlson v. Oregon Short Line, etc., R. Co.,* 21 Ore. 450, 28 Pac. 497. A different case, however, is disclosed by this record. True the roadbed of the defendant was out of repair on account of the recent floods; so much that traffic thereon was practically suspended. The plaintiff was employed to assist in putting it in a reasonably safe condition for the passage of trains. In *Carlson v. Oregon Short Line, etc., R. Co., supra,* the Supreme Court of Oregon passed on a similar state of facts, wherein it said:

"It has no application to the safety and condition of the thing which the servant is employed to repair. Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in safe condition and good repair for the purpose of such employment. The effect of such a rule would be to render the master liable as an insurer of the safety of his servant, and entirely abrogate the well-settled doctrine that the servant assumes the risks and perils incident to his employment. Where a servant is employed to assist in repairing or opening a railway which is in a dilapidated condition and out of repair, the master does not owe to him the same duty to furnish a safe roadbed as to that portion of the road out of repair as it does to a servant engaged in the operation of trains upon the road in the ordinary course of business or in riding upon the road in the course of his employment."

In *G., C. & S. F. Ry. Co. v. Jackson,* 65 Fed. 48, 12 C. C. A. 507, in an opinion by Thayer, Circuit Judge, concurred in by Circuit Judges Caldwell and Sanborn, it is said:

"Considering all of the circumstances under which the injuries complained of in the case at bar are said to have been sustained, we think that the case did not warrant an application of the doctrine of 'safe place,' as that doctrine is ordinarily applied, and that the trial court erred in the instruction above quoted in charging the jury, in substance, that the plaintiff might recover if the defendant failed to furnish safe premises where the work was to be done, and if the plaintiff was injured by reason of such failure to furnish safe premises. In our judgment this portion of the charge made the defendant company responsible for an injury occasioned by an ordinary risk of the particular employment, which was clearly assumed by the employee. As we have heretofore stated the plaintiff had been sent out in the night-time, with a large gang of extra section men, to help tear up, remove, and relay a portion of a railroad track that was in imminent danger of being washed into the river by high water. The work on that occasion not only had to be done with great haste, but it was a kind of work which, if done with less haste and in the daytime, would naturally cause the right of way to become incumbered, for the time being, by ties, rails, loose earth, and such other obstructions as are ordinarily incident to the work of dismantling an old track and laying a new one. This condition of affairs must have been foreseen by the plaintiff when he undertook to assist in reconstructing the track, as he had been in the employ of the defendant company, as a section man, for some two years and was doubtless familiar with the manner in which such work was usually done and the risks incident thereto. He had every reason to expect that he would be called upon to carry or assist in carrying rails and ties where the track was torn up, and the ground was somewhat broken and obstructed by debris, and that it might happen on such occasions that some one would stumble and perhaps fall. He certainly had no reason to suppose that the right of way where he would have occasion to work would be kept free at every moment from all such impediments as might cause a man to lose his footing, nor can it be said, in view of the character of the work in which the plaintiff was engaged, that it was the duty of the defendant company to thus keep

its right of way at all times free from such obstructions. It is obvious, we think, that, in so far as the injury complained of was occasioned by defects in the place where the plaintiff was required to work, it must be attributed to one of the ordinary risks of the service in which he was engaged, and which he impliedly assumed when he became engaged in such service."

See, also, *Florence & C. C. R. Co. v. Whipps et al.,* 138 Fed. 13, 70 C. C. A. 443.

The fact that the track had been washed out by the recent floods and the roadbed was thereby put in a dilapidated condition could not be the proximate cause of a piece of limestone or other ballast rock flying into the eye of the plaintiff on account of being tamped with a pick or such appropriate tool. The flying of such rock or ballast material into the eye obviously was an accident and a danger incident to the employment, which as a matter of law was assumed by the defendant.

The carpenter in driving a nail may strike it in such a way as it will deflect and fly into the eye and injure it. The hired man in chopping wood may drive the axe into the tree or the timber in such manner that a chip or chips may fly into the eye and injure the same. Each injury resulted from an accident, a risk that was incident to the employment and assumed as a matter of law by the employee. *Smith v. Acme Milling Co.,* 34 Okla. 439, 126 Pac. 191. It would be just as reasonable to claim that the owner of the barn who had employed the carpenter to cover the same was liable on account of the accidental flying of the nail from the way the hammer struck it, thereby causing an injury to the eye of the carpenter, as it is to claim that the railway company is liable in this instance. Likewise it would be as reasonable to claim that the farmer who had hired one to chop wood or clear away timber in order to put the land in cultivation was liable on account of the accidental hitting of the eye by the flying chip. The same law governs

the rights of the farmer, the artisan, and the laborer, as that of the railway company, and applies to all alike. It is unfortunate that the defendant in error (plaintiff) got his eye hurt, and all humane people sympathize ,with him in his misfortune. He is entitled to a judgment against this plaintiff in error (defendant) only when he complies with the burden of proving that it has negligently injured him. No evidence is disclosed by this record · to prove any primary negligence on the part of the defendant. The uncontradicted evidence shows that the plaintiff was injured as a result of an accident which was incident to the hazard of his employment. *Dewey Portland Cement Co. v. Blunt, supra.*

"When the question is that the injury to the employee resulted from an assumed risk which an ordinary prudent employer would not have exposed the servant to," thereby presenting a question of a breach of duty on the part of the master, and the defense is interposed that the employee with the knowledge of such omission of duty entered the employment of the master without any objection as to such omission of duty or any promises on the part of the master that such omission would be corrected, and such omission on the part of the master was not in violation of . any statute, then the question as to whether the servant assumed that risk under section 355, Williams' Ann. Const. Okla. (section 6, art. 28, Constitution of Oklahoma), is "a question of fact" to "be left to the jury" for its determination. *Curtis & Gartside Co. v. Pribyt, ante,* 134 Pac. 71. No such question arises in this case; there being no evidence tending to show any omission of duty on the part of the defendant, but showing purely an accident, resulting from no negligence on the part of the defendant. Under such a state of facts, the law does not provide for a recovery on the part of the plaintiff. Such a recovery not being provided by law, this court is not permitted under the Constitution and laws of this state to adjudicate that a

recovery shall be had. This court would be as derelict to permit a recovery when the facts did not warrant it as it would to prevent a recovery if the facts did warrant it.

The way we understand the brief of the defendant in error (plaintiff) is that counsel contend that, on account of the delay in the arrival of the trunk containing his credential certificate and tools, he took employment as a section hand rather than as a bridge carpenter, and for that reason he was working as a section hand and received the injury, and the delay in the transmission of the trunk was the proximate cause of the injury to his eye. We do not think any authority from any appellate court can be cited as sustaining this contention.

In *Hughes v. C., R. I. & P. Ry. Co.*, 35 Okla. 482, 130 Pac. 591, it is said:

"In *Chicago, R. I. & P. Ry. Co. v. Beatty*, 27 Okla. 844, 116 Pac. 171, it is said: 'The correct rule seems to be that a person guilty of negligence or an omission of duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind.' Shearman & Redfield on Negligence (4th Ed.) sec. 29."

The following authorities sustain this formula for the determination of whether an injury is the proximate result of negligence: *Williams v. S. F. & N. W. R. Co.*, 6 Cal. App. 715, 93 Pac. 122; *Wabash R. Co. v. Coker*, 81 Ill. App. 660; *Id.*, 183 Ill. 223, 55 N. E. 693; *Green-Wheeler Shoe Co. v. Chicago, etc., R. Co.*, 130 Iowa, 123, 106 N. W. 498, 5 L. R. A. (N. S.) 882, 8 Ann. Cas. 45; *Rodgers v. Missouri Pacific Ry. Co.*, 75 Kan. 222, 88 Pac. 885, 10 L. R. A. (N. S.) 658, 121 Am. St. Rep. 416, 12 Ann. Cas. 441; Jeremiah Smith on Legal Course in Actions of Tort: Harvard Law

Review, Dec., 1911, Jan. and Feb., 1912; 1 Shearman & Redfield (6th Ed.) sec. 29, p. 58.

How can it be said that the defendant at the time of its failure to promptly transmit the trunk, knowing that the plaintiff was going forward to the same point of destination for the purpose of engaging in its service as a bridge carpenter, and that the trunk contained his tools and credential card for such purpose, could have known, as a reasonable and prudent man, that as a result of such failure to transmit the trunk the plaintiff would take employment as a section hand and thereby this accident would probably follow and his eye be injured, especially in view of the fact that the uncontradicted evidence shows that the plaintiff was an experienced section hand?  See, also, *St. Louis & S. F. R. Co. v. Mayne,* 36 Okla. 48, 127 Pac. 474, 42 L. R. A. (N. S.) 645; *Chicago, R. I. & P. Ry. Co. v. Watson,* 36 Okla. 1, 127 Pac. 693; *Chicago, R. I. & P. Ry. Co. v. Moore,* 36 Okla. 450, 129 Pac. 67.

This cause is reversed and remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur.