## CHICAGO, R. I. & P. RY. CO. v. FOLTZ.

No. 4722.    Opinion Filed January 11, 1916.

(154 Pac. 519.)

1. **MASTER AND SERVANT—Injury to Servant—Negligence—Presumptions from Accident.** An accident to an employee in the course of his employment carries with it no presumption of negligence on the part of the employer. The negligence of the employer is an affirmative fact to be established by the plaintiff.

2. **NEGLIGENCE—"Actionable Negligence"—Elements.** To constitute actionable negligence where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plain-

tiff from injury; (2) failure of the defendant to perform that
duty; and (3) injury to the plaintiff resulting from such fail-
ure.

3.    EVIDENCE—Hearsay—Res Gestae. Evidence of a statement of
      an employee of the company examined, and **held** to be a narrative
      of a past act subsequent to the accident, and not a part of the
      res gestae; the admission of such hearsay evidence being preju-
      dicial error.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Major County;*
*James W. Steen, Judge.*

Action by Charles Foltz, administrator of the estate
of Sidney Foltz, deceased, against the Chicago, Rock
Island & Pacific Railway Company. Judgment for plain-
tiff, and defendant brings error. Revived in the name
of Maggie Foltz, as administratrix of the estate of Sidney
Foltz, deceased. Reversed and remanded.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gam-*
*ble, K. W. Shartel,* and *Brady & Willis,* for plaintiff in
error.

*A. Fairchild, Harry Randall, A. C. Beeman,* and
*E. C. Wilcox,* for defendant in error.

Opinion by RITTENHOUSE, C. This is an action
by Maggie Foltz, as administratrix of the estate of Sid-
ney Foltz, deceased, to recover damages from the Chi-
cago, Rock Island & Pacific Railway Company for the
wrongful death of her son, Sidney Foltz, on or about
November 19, 1909, while said deceased was an employee
of the company as a section laborer, engaged on the day
of his death in removing drift lodged against defendant's
bridge over Eagle Chief creek, in Alfalfa county, Okla.
It is alleged in the petition:

"That on and prior to the 14th day of November,
1908, the said defendant, as a part of its roadbed in the

county of Major and State of Oklahoma aforesaid, had constructed a bridge over Eagle Chief creek, which bridge and portion of the roadbed of said defendant was necessary and used in the commerce aforesaid between the states; that said Sidney Foltz was an inexperienced section man; he did not know of the various dangers that he would encounter in the work herein mentioned; that on said 14th day of November, 1909, the said Eagle Chief creek was in a turbulent, swollen, and surging condition, and said stream bore in its current a great quantity and number of logs, drift, and trash, which was about to and did accumulate at said bridge, and was extremely apt to seriously damage said structure or demolish it and cause it to be swept away in the current, and said Amos Craig, foreman of said defendant, who had charge of the roadbed and repairing of said bridges and the general care and protection of the same from such drift, thereunto duly authorized, did on said 14th day of November, 1909, order the said Sidney Foltz to take a certain hook and pole and to assist other workmen in clearing said bridge of said drift and trash as might be lodged or about to be lodged against it, and to cause all of said drift and trash borne by said stream to pass under and beyond said bridge and to avert danger and damage thereby by reason of said swollen stream and the rapidity of the current as aforesaid; that, notwithstanding the fact that said Sidney Foltz was inexperienced and did not apprehend or appreciate the danger of said work, and that said defendant owed to said Sidney Foltz the duty to furnish him with reasonably safe tools and appliances with which to work, to not order him to work in a dangerous place, to furnish him with reasonably competent co-servants to work with, and the use of ordinary care in each of said particulars, the defendant wholly failed to recognize its duties as aforesaid, and furnished said Sidney Foltz with a pole that was fitted with a point or hook at the end thereof with which to loosen said drift, logs, and trash and to prod the same under said bridge, which pole was warped and crooked and insuffi-

cient in size, and had a dull point or hook on the end thereof, and was not a reasonably safe tool or appliance with which to work, and furnished said Sidney Foltz an unsafe place to work, to, wit, said bridge, and furnished said Sidney Foltz grossly incompetent and inexperienced co-employees and servants who did not know the English language, and could not understand or speak the same, and could not hear and understand the command of the said Amos Craig as to what to do in assisting said Sidney Foltz, although given in plain English, all of which the said defendant well knew, or by the exercise of reasonable care could have ascertained and which was unknown to said Sidney Foltz; that by reason of the carelessness of said defendant as aforesaid, all of which was occasioned in and about the care, repair, and preservation of said bridge and roadbed of said defendant in the aid and furtherance of its performing its duty as a common carrier between the said states, the said Sidney Foltz, in the scope of his duty and at the command of said foreman, undertook to push and pull said drift, logs, and trash, and prevent the same from accumulating and cause the same to float under said bridge and down said stream, and on account of the negligence aforesaid of the said defendant, its servants and employees, said point and said hook slipped and failed to stick into and hold said drift, logs, and trash, and said Sidney Foltz slipped off said dangerous place he was standing, to wit, said bridge, and fell into said stream and drowned."

In support of this petition the plaintiff proved that the deceased was 33 years of age; had had no sickness; had only worked five days on the section, and the foreman directed him, with two Mexicans, one named George, to go and remove the drift from the bridge, which was constructed of building timbers and crosspieces extending on either side of the track. He was dressed in heavy clothing, and wore new shoes and gloves. He was seen going

in the direction of the bridge on a hand car about 10 o'clock with the two Mexicans. About 12 o'clock the two Mexicans were seen returning. At one o'clock the foreman bore the news of his death to his mother. His coat was found on the bridge. A prod pole that was slivered, and liable to catch on the clothing and with a blunt point about one-fourth of an inch square was found across some logs beneath the bridge, one of which logs had a wire around it, running in the direction of some tracks on the bank north of it, at the end of the log, which tracks fit the shoes of the Mexican, George. The tracks were deeper at the heel than at the toe, and the wire around the log extended in the direction of the tracks. Another employee had used this prod pole prior to the accident, and was cautioned by the foreman about using it. It was twelve or fifteen feet long and unwieldly to handle. The log around which the wire was found had a number of indentations in it corresponding with the point on the prod pole, and was chipped off and slivered on the side for a distance of about four feet; some of the marks being on the top, and some on the sides. The body of Sidney Foltz, on which there were no wounds or bruises, was found below the bridge. There were no rents in the clothing, except one of four or five inches on the inside of his overalls. The prod pole was sent to the company immediately after the accident.

This is the only competent evidence admitted tending in any manner to substantiate the allegations of the petition. An examination of this evidence discloses that there was no evidence that the deceased was at the time of his death engaged in the removal of the drift as ordered by his employer, nor is there any evidence that he was on the bridge and met his death by falling therefrom, nor

is there any evidence that he was using the defective prod pole at the time he met his death, and, while these facts are alleged in the petition, yet there is an absence of proof on the subject. The only eyewitnesses to this accident were two Mexicans, who were not present at the trial, and whether the deceased met his death through the negligence of the railroad company is a mere matter of guess or conjecture. The only competent evidence tending in the least to throw any light upon the question of how the accident occurred was the evidence that the section foreman had sent the deceased, together with two Mexicans, to go to this particular bridge for the purpose of removing the drift; that they were seen going in the direction of the bridge, and had certain prod poles with them; afterwards the Mexicans came back and informed the employer of the accident, and one witness testified that when they returned deceased's coat was lying on the bridge, the prod pole upon some logs, and there were marks on the logs corresponding with the end of the prod pole, and the deceased's body was found about 14 days thereafter below the bridge. These facts, construed together, show that an accident occurred which cost the deceased his life, but such facts do not carry with them the presumption that the railroad company was negligent in failing to furnish a safe place to work and safe tools with which to work, and that by reason of such failure the death occurred. Before plaintiff can recover, it is incumbent upon her to show that the company was guilty of negligence, not that the company may have been guilty of such negligence, but that it was in fact guilty of negligence, and such negligence was the cause of the death. Proof of the accident and death alone is not sufficient to authorize a recovery. In *Patton v. Texas & P. Ry. Co.,*

179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361, the court says:

"The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. * * * It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. * * * If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony. * * * "

This case is approved and discussed in *St. Louis & S. F. R. Co. v. Rushing et al.,* 31 Okla. 231, 120 Pac. 973; *Solts v. Southwestern Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776; *Neeley v. Southwestern Cotton Seed Oil Co.,* 13 Okla. 356, 75 Pac. 537, 64 L. R. A. 145; *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191; *Chicago, R. I. & P. Ry. Co. v. Duran,* 38 Okla. 719, 134 Pac. 876.

It is apparent from this record that the plaintiff has failed to show actionable negligence on the part of the company. To constitute such negligence, where the alleged wrong is not wilful and intentional, this court has repeatedly held that three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) the failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure. *Chicago, R. I. & P. Ry. Co. v. Duran, supra,* and cases there cited. In the instant case the negligence relied upon is the fact that the company furnished the deceased with a defective prod pole with which to remove the drift and

an unsafe place to work. There is a want of any evidence upon this subject, and therefore the case at bar does not come within the rule announced.

It is contended by the defendant in error that the want of testimony showing the negligence of the company and the manner in which the deceased met his death was supplied by the testimony of one Elmer E. Law, who testified on behalf of the plaintiff that the Mexican by the name of George, who was present at the time of the accident, told the witness where the deceased was standing, that they had managed to get the wire around the log, that he was pulling on the wire, and the other two were working with their prod poles on the bridge, indicating the log they were working on when deceased fell off the bridge, indicating on what tie the deceased was standing, and showing him the tracks in which he. stood .when the prod pole gave way, and which prod pole was used by the deceased. It is argued that this statement was admissible as a part of the *res gestae* and made by an agent of the company while in the discharge of his agency with such company; but an examination of the record shows that it was a narrative by the Mexican to the witness four or five hours after the accident occurred. It was said in *Gillespie et al. v. First Nat. Bank,* 20 Okla. 768, 95 Pac. 220:

"Declarations and admissions of the officers and agents of a corporation may be proved against the corporation as a part of the *res gestae* when the same are made during the agency of such officer or agent making such declarations or admissions, and when the same are in regard to a transaction depending at the very time, but they cannot be admitted if made as a narrative of a past act subsequent to the transaction. Abbott's Trial

Evidence, 55; 1 Greenleaf on Evidence, 172; Zane on Banks and Banking, 169."

In the case of *City of Wynnewood v. Cox*, 31 Okla. 563, 122 Pac. 528, Ann. Cas. 1913E, 349, the court said:

"The objection was that the evidence was incompetent, being the declaration of an agent made subsequent to the accident and only conjecture, and could not bind the principal. In defense of this objection, counsel for plaintiff insist that, as corporations can act only through their agents, and as Whitaker was the general superintendent of this lighting system, he was therefore the agent of the city, and his acts and statements were the acts and statements of the corporation, and also that, if the statement was not received as an admission, it was admissible as a part of the *res gestae*. In neither of these contentions are we able to concur. The general rule is laid down in the case of *Garske v. Town of Ridgeville*, 123 Wis. 503, 102 N. W. 22, 3 Ann. Cas. 747, to be, in substance, that declarations or admissions of a public officer cannot be given in evidence to bind a municipal corporation of which he is the agent, unless they are a part of the *res gestae*. This case is fully annotated in volume 3, American & English Annotated Cases, at pages 747, 749. And that the statement here sought to be introduced was not a part of the *res gestae* we think is clear from the circumstances under which it was given.

" 'Res gestae,' as said by Mr. Wharton, in his work on Criminal Evidence (section 262), 'are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What

they did or said is not hearsay; it is part of the transaction itself."

It cannot be said that the statement of the Mexican, George, to witness Law was a part of the *res gestae*. The statement formed no part of the circumstances of the accident itself; it was not made under the immediate spur of a transaction. In the case of *Coalgate Co. v. Hurst,* 25 Okla. 588, 107 Pac. 657, Mr. Justice Williams, in writing the opinion, held that statements made by a fellow servant within 20 or 30 minutes after the accident were not a part of the *res gestae*. See, also, *City of Wynnewood v. Cox, supra; Gowen v. Bush,* 76 Fed. 349, 22 C. C. A. 196; *Fredenthal v. Brown & McCabe,* 52 Or. 33, 95 Pac. 1114; *Louisville & N. R. Co. v. Pearson, Admr.,* 97 Ala. 211, 12 South. 176; *Garske v. Town of Ridgeville,* 123 Wis. 503, 102 N. W. 22, 3 Ann. Cas. 747.

We therefore conclude that the evidence of Elmer E. Law as to the conversations held with the Mexican, George, was hearsay evidence and incompetent, and that the court erred in refusing to sustain the demurrer to the evidence or peremptorily to instruct the jury.

The judgment should therefore be reversed and the cause remanded for a new trial.

By the Court: It is so ordered.