## SOLTS v. SOUTHWESTERN COTTON OIL CO.

### No. 707.    Opinion Filed May 9, 1911.

1. **TRIAL—Directing Verdict—When Warranted.** The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled.

2. **MASTER AND SERVANT—Injuries to Servant—Furnishing Safe Appliances—Case.** Plaintiff, an employee of defendant, was charged with the duty of unloading cotton seed from a box car on a side-track into a seed conveyor parallel therewith, said conveyor consisting of a long metal-lined trough about 16 inches wide in which lengthwise ran a metal screw about 12 inches in diameter, and which had, the season before, been covered by an immovable grating of metal rods three inches apart, upon which said seed had been theretofore unloaded, but which said grating at the time of the injury lay in six foot sections which could be raised on hinges and hooked against the building to which the conveyor was attached. To accomplish the work he

was required to raise and hook back a section of the conveyor opposite the open door of the car, lay a platform of loose boards from the outer edge of the open conveyor to the car door, enter the car, and fork the seed from it into the open section of the conveyor. After laying the platform, in order to get into the car, plaintiff got on top of said conveyor at the end of the building, walked to where said section was raised, and, in attempting to step from there to the platform on his way into the car, lost his balance, stepped into the moving screw of the conveyor, and received the injuries complained of. **Held**, that there was no evidence that defendant was negligent in that it failed in the performance of its duty to provide a reasonably safe appliance for the performance of the work required by failing to keep said conveyor covered as during the previous season.

(Syllabus by the Court.)

Dunn, J., dissents.

*Error from District Court, Oklahoma County; Geo. W. Clark, Judge.*

Action by Jasper Solts against the Southwestern Cotton Oil Company, a corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

*W. L. McCann,* for plaintiff in error.

*Flynn, Ames & Chambers,* for defendant in error.

TURNER, C. J.   This is an action by plaintiff in error, plaintiff below, against defendant in error, defendant below, in damages for personal injuries alleged to have been sustained by plaintiff as a result of the negligence of defendant. After answer filed, in effect, a general denial, plea that plaintiff assumed the risk of the employment and contributory negligence, there was trial to a jury. At the close of the testimony the court, on motion, instructed the jury to return a verdict for defendant, which was done. Plaintiff brings the case here and assigns this for error. Tested by the rule that:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting and the

court is asked to direct a verdict, all facts and inferences in con-
flict with the evidence against which the action is to be taken must
be eliminated entirely from consideration and totally disregarded,
leaving for consideration that evidence only which is favorable to
the party against whom the motion is leveled"
—the question for us to determine is, Was there any evidence in
this case that defendant was guilty of negligence in that it failed
in the performance of its duty to provide reasonably safe appli-
ances for the performance of the work required? *Gowan v. Har-
ley*, 56 Fed. 973. If there is, the court erred in taking the case
from the jury, otherwise not. The evidence discloses that at the
time of the injury plaintiff was about 30 years old, with the mind
of a child of about 10 years; that during the previous season he
had worked for defendant a short time, but at the time of the ac-
cident, October 24, 1905, had been so employed only for about a
week; that he worked as a common laborer at defendant's seed
house, which was a large frame building used principally for
storing large quantities of cotton seed and contained shafts, con-
veyors, and other machinery used to distribute the seed into dif-
ferent parts of the building, which was 250 feet long east and west
and 50 feet wide; that a railroad sidetrack ran full length and
parallel with the south side thereof, and that the distance between
a box car standing on this sidetrack and said house is about 34
inches; that along the entire length of said house and about 3 or
4 feet from the ground was attached a wooden trough within
which, extending its full length, was a screw conveyor consisting
of a long metal shaft, attached to which were augerlike flanges,
the screw being of a diameter of about 12 inches; that said trough
was of oak boards two inches thick and 18 inches wide, lined with
semi-circular perforated sheets of metal and was covered its en-
tire length with a grated frame in six-foot sections made of iron
9/16 rods three inches apart extending across it; that said sec-
tions were hinged at the back and could be raised and fastened to
the building, thus leaving said screw exposed the length of the
section raised; that when the machinery was in operation said con-
veyor revolved rapidly and distributed cotton seed unloaded into

·it from cars on the sidetrack westward, then northward into the building; that the method adopted of unloading said seed at the time of the injury was to raise a section of the top of the conveyor, hook it back against the wall, open the car door on the north side, and from it to the near edge of the trough lay a platform of short boards; that the purpose of the platform was to keep the cotton seed from falling to the ground in the narrow space between the edge of the trough and the car while being forked by workmen in the car from the car into the open conveyor; that about 9 o'clock on the night of the injury the superintendent came to plaintiff and ordered him to go to another car on the track and open and unload it; that plaintiff went, opened the car, raised and hooked against the building a section of the top of the conveyor opposite the car door, and, with boards procured for the purpose, arranged a platform as described; that after so doing he passed under the platform and went west between the car and the conveyor to and around the end of the other cars on the sidetrack and to the south door to the car he intended to unload; that he tried to open said door, but failed, whereupon he retraced his steps to the west end of the cars and there got on top of the covered seed conveyor and walked east as far as it was covered and, in attempting to step from there onto the platform in order to get in the car, lost his balance and fell, his left foot coming in contact with the rapidly revolving screw of the seed conveyor which ground in his foot and leg, necessitating amputation; that the superintendent, hearing his cries, went around and entered the building and stopped the machinery by throwing a clutch; that during the preceding season the cover of this conveyor consisted of one piece extending its entire length, which was permanently fastened down; that cars were unloaded by throwing the seed on top of it, which when clean would fall through, but when containing grab boles or trash a man would have to walk on them and tramp them through as best he could, and that this manner was abandoned about the beginning of the season.

The petition substantially charges, and counsel for plaintiff,

in effect, insists, that defendant failed to furnish him reasonably safe appliances with which to work, in that (1) defendant was negligent in failing to provide a foot board or other safe place for workmen to stand on in raising the top of the grating, opening the car door, or adjusting the platform between the car and trough; also in that (2) defendant was negligent in failing to provide a clutch or lever reasonably near the conveyor to throw it out of gear in case of accident; and that (3) defendant was negligent in not continuing the use of iron grating as a cover for the conveyor as used the previous season, and that the effect of the change was a failure to furnish plaintiff a reasonably safe appliance and needlessly to expose him to danger into which he fell and was injured. From the facts thus disclosed the court, in effect, held that they failed to raise the presumption of negligence in any of the particulars relied on, or, in other words, that the doctrine of *res ipsa loquitur* did not apply. This was not error. This case is governed by the rules of law applicable to the relation of employer and employee. These rules differ from those which govern in cases of injury to passengers for hire. Whether the rule of *res ipsa loquitur* ever applies as between employer and employee, and such has been denied by the Supreme Court of the United States in *Patten v. Texas, &c., R. Co.,* 179 U. S. 658, it has no application here. In that case the court said:

"The fact of accident carries with it no presumption of negligence on the part of the employer; and it is an affirmative fact for the injured employee to establish that the employer has been guilty of negligence. * * * It is not sufficient for the employee to show that the employer may have been guilty of negligence; the evidence must point to the fact that he was. * * * If the employee is unable to adduce sufficient evidence to show negligence on the part of the employer, it is only one of the many cases in which the plaintiff fails in his testimony."

This case on this point is cited and followed in *Neeley v. Southwestern Cotton, &c., Co.,* 13 Okla. 356, where the court in the syllabus said:

"In case of an accident to an employee, the fact of accident

carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to establish that the accident was the result of the negligence of the employer."

As the case at bar was pending at the time of the erection of the state, this rule controls here. *State Mutual Ins. Co. v. Craig*, 27 Okla. 90, 111 Pac. 325.

Bearing in mind the evidence discloses that plaintiff received his injury in attempting to get into the car, it is unnecessary to consider whether the evidence raises the presumption of negligence on the part of defendant in failing to furnish a foot board or other safe place for plaintiff to stand on in raising the top of the grating, opening the car door, or adjusting the platform, for the reason that plaintiff was not injured in the attempted discharge of any of said duties. And, as no question of defective construction is relied on, defendant's alleged failure to provide a clutch or lever reasonably near to throw the machinery out of gear in case of accident need not be considered. The negligence relied on is, in effect, that the master failed to use the iron grating or cover for the conveyor as used the previous season and that the effect of the change was a failure to furnish plaintiff with a reasonably safe appliance and needlessly to expose him to danger, into which he fell and was injured. Now, the burden is on plaintiff to prove negligence: to convict the master of negligence, plaintiff must not only prove the injury, but must go further and prove that the failure of the master to use the cover as used the previous season was the proximate cause of his injury, and that the master, by the exercise of such care and foresight as a man of ordinary prudence should have exercised under like circumstances, should have reasonably anticipated that his failure so to do would result in plaintiff being injured as he was. Coupled with proof of the physical fact of injury, proof of the latter is indispensable to a recovery, for the reason that the master is entitled to the presumption that he has done his duty and therefore not negligent, and further proof is necessary to overcome this presumption.

In *Dulling v. Duerler Mfg. Co.* (Tex.) 87 S. W. 332, the

facts were that plaintiff's ward, Robert, 17 years old, was employed by defendant, and had been for some time, in washing empty bottles and handling and packing the same filled with certain waters charged with a certain gas; that on April 12, 1902, while so doing, in turning them top end down in a box one of the bottles exploded and a piece of glass ·therefrom put out his eye. They were second-hand bottles tested to stand pressure of from 80 to 100 pounds to the square inch and were charged with mineral water to a pressure of 25 pounds to the square inch. The bottle which exploded was of the same kind and character as the others he was handling, and, if defective, the same was unknown to appellant. He had been instructed by appellant as to the proper manner of handling bottles so charged, and was so doing when the explosion occurred. There was no evidence tending to show that appellant's bottling apparatus were unfit or dangerous or that its employees operating them were careless, unskillful, or negligent, or that the exploded bottle was not carefully filled, charged, and corked and perfectly safe for any one to handle in the manner the ward was instructed to and did handle it. In this state of facts the court said that:

"The appellant not being able, by the exercise of such care and foresight as a man of ordinary prudence would have exercised under the same or like circumstances, to reasonably anticipate the explosion, was not required by ordinary prudence to furnish an employee handling such bottles with a mask to prevent injuries from explosions it could and did not anticipate"

—and dismissed the suit at the cost of plaintiff.

In *Gowen v. Harley, supra,* the court, after stating the law to be:

"It is the duty of the master to use that degree of care commensurate with the character of his various operations which an ordinarily prudent person would exercise under like circumstances to supply his servants with reasonably safe machinery and appliances with which to perform the service assigned to them. A breach of this duty is actionable"

—said that the first question to be determined in that case under

said rule was whether there was evidence in the case that defendant was guilty of negligence,—"That he failed in the performance of his duty to provide reasonably safe appliances for the performance of the work required of the plaintiff and his fellow servants." In that case the facts were that plaintiff and his fellow servants, employees of defendant, were employed to transfer a box weighing 200 to 250 pounds, with a good handle at each end, from one car to another as they stood on the tracks at McAlester with doors opposite each other and about 5 feet apart. The surface of the ground between the cars at the place of transfer was hard and smooth and the shoulders of a man standing upon it were about the height of the lower floor of the cars. When plaintiff took employment with defendant the box was transferred in this manner: A double rope 18 inches long was attached to one of the handles, the porter would shove the box part of the way out of the door of the car and take hold of the rope, plaintiff would stand in the door of the car opposite, brace himself with one hand against the jam of the door opposite, seize the handle of the box with the other and both men would then swing it across into the car where plaintiff stood. As they were in the act of so doing at the time of the injury complained of, the rope came untied and plaintiff fell out of his doorway and was injured. The rope was not an appliance furnished by defendant, but was attached to the handle by plaintiff or the porter. The box had been thus transferred before plaintiff entered the service. A few days after entering service he asked the master mechanic of defendant for some skids, to slide the box across upon and the next day was supplied with two planks which he used for some time, but was taken sick and lost them. Thereafter he transferred the box daily up to the time of the accident in the manner indicated. Within 30 days after his return to the service after his sickness, and during the month prior to the injury, he asked of the proper officer of defendant that said planks be again furnished, which was promised, the last being three days before the accident. This was done for the sole reason that to skid the box on them was easier than to swing it over. It

was urged that defendant was guilty of negligence because of his failure to furnish the skids to transfer the box from one car to the other; that a man of ordinary prudence would have foreseen that this box could not be safely transferred without such skids and would have furnished them. But the court held not so, and that the jury should have been instructed that there was no evidence in the case of any breach of duty on the part of defendant, and for that reason they should return a verdict in his favor, citing: *Aerkfetz v. Humphrey,* 145 U. S. 418, 12 Sup. Ct. Rep. 835; *Tuttle v. Railway Co.,* 122 U. S. 189, 196, 7 Sup. Ct. Rep. 1166; *Goodlett v. Railroad Co.,* 122 U. S. 391, 410, 7 Sup. Ct. Rep. 1254.

In *Surles, App. v. Kissler,* 202 Pa. 289, defendants were charged with negligence in failing to maintain the floor of a laundry in condition. The facts were: Plaintiff was the servant of defendants, the proprietors of the laundry, and had been upon the premises for years; that at the time of the injury she was scrubbing the floor covered with wooden racks for the purpose of keeping the feet out of the wet. When scrubbing under them she set them to one side. She testified that at the time of the injury there was nothing to indicate that the floor was unsafe to walk upon at the place where she was hurt, but that the same gave way and her foot went through. Other evidence indicated that she stepped or slipped through a hole used for discharging water at that point. The court, in effect, held that as the evidence disclosed defendants had no reason to anticipate such occurrence, it was not error to direct a verdict in their favor. *McCarthy v. Shoneman,* 198 Pa. 568; *Fuller v. Ann Arbor R. Co.* (Mich.) 104 N. W. 414; *Stamford Oil & Mill Co. v. W. T. Barnes,* recently decided by the Supreme Court of Texas,

In the case at bar there is no evidence tending to prove that the conveyor was other than of the latest pattern, perfectly constructed and in perfect working order; that the method adopted of loading into it seed from the car was other than the latest and most approved and that the section of the cover raised could not have been lowered by plaintiff and the screw thus covered at any

time his safety required it. With this view, and that there is no evidence tending to prove that defendant could, by the exercise of ordinary prudence, but did not, anticipate the injury and continue the use of the cover as during the previous season, there is no proof of negligence. The judgment of the trial court is therefore affirmed.

HAYES, KANE, and WILLIAMS, JJ., concur; DUNN, J., dissents.