## UNITED STATES v. STIGALL.*

(Circuit Court of Appeals, Eighth Circuit. September 4, 1915.)

### No. 4256.

INDIANS ⊝5—RESTRICTION ON ALIENATION—SUIT TO SET ASIDE CONVEYANCE
—STATUTES.

Act July 1, 1898, c. 542, 30 Stat. 567, ratifying the agreement between the Dawes Commission and the Seminole Nation of Indians, provided that all contracts for the disposition of any part of any allotment, made prior to the date of the patent, should be void, and Act April 26, 1906, c. 1876, 34 Stat. 137, 144, 145, provided by section 19 that no full-blood Indian of the Creek or Seminole tribes could alienate lands allotted to him within 25 years after its passage, and that the quantum of Indian blood possessed by any member should be determined by the rolls of citizens approved by the Secretary of the Interior, and by section 22 that adult heirs of any deceased Indian whose selection had been made, or to whom

---

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied December 4, 1915.

a deed or patent had been issued, might convey such lands. A Creek Indian woman of the full blood married a Creek of the half blood and became a member of the Seminole Nation by adoption and was so enrolled, and her son, enrolled as a Seminole of the half blood, died leaving her his sole heir to his allotment. On May 8, 1906, before any patent had issued, and without the secretary's approval, she conveyed her own and her son's allotment. *Held*, in the government's action to set aside the conveyance, that her enrollment was not an adjudication as to whether she was a white woman or an Indian, so that the grantee was entitled to the trial of such issue.

[Ed. Note.—For other cases, see Indians, Dec. Dig. ☞5.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action in equity by the United States of America against J. B. Stigall. Judgment for defendant dismissing the suit, and the government appeals. Reversed and remanded, with instructions to overrule the motion to dismiss and to give the defendant opportunity to answer.

Carter Smith, Asst. U. S. Atty., of Tulsa, Okl. (D. H. Linebaugh, U. S. Atty., of Muskogee, Okl., and C. C. Herndon, Special Asst. U. S. Atty., of Tulsa, Okl.), for appellant.

Harry H. Rogers, of Tulsa, Okl., for appellee.

Before SANBORN, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. This is an action in equity brought by the United States under the rule laid down by this court in United States v. Allen, 103 C. C. A. 1, 179 Fed. 13, as affirmed by the Supreme Court in Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820, and subsequent cases.

A motion to dismiss for lack of jurisdiction and for want of equity was filed and sustained upon the latter ground. The case was dismissed, and the government appeals.

It appears from the bill of complaint that Munnah was a female Creek Indian of the full blood. She married London Coker, who was a Creek Indian of the half blood. She long resided in the Seminole Nation and became a member of that tribe by adoption and was so enrolled. She had one son, Jeff Coker, who was by blood three-fourths Creek and, for aught that appears, one-fourth white. He was enrolled as a Seminole of the half blood and died in November, 1900, leaving Munnah, his mother, as his sole heir. July 1, 1898, Congress passed "An act to ratify the agreement between the Dawes Commission and the Seminole Nation of Indians." A provision of this act is as follows:

"All contracts for sale, disposition, or incumbrance of any part of any allotment made prior to date of patent shall be void." 30 Stats. 567.

Subsequently, but before the execution of the deed here in question, Congress passed on April 26, 1906, the following law:

"Sec. 19. That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole tribes shall have power to alienate, sell, dispose of, or incumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restriction shall, prior to the expiration of said period, be removed by act of

Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior: Provided, however, that such full-blood Indians of any of said tribes may lease any lands other than homesteads for more than one year under such rules and regulations as may be prescribed by the Secretary of the Interior; and in case of the inability of any full-blood owner of a homestead, on account of infirmity or age, to work or farm his homestead, the Secretary of the Interior, upon proof of such inability, may authorize the leasing of such homestead under such rules and regulations: Provided further, that conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the selection of allotment and subsequent to removal of restriction, where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinabove provided; and every deed executed before, or for the making of which a contract or agreement ·was entered into before the removal of restrictions, be and the same is hereby, declared void: Provided further, that all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

"Sec. 22. That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then ·such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe." 34 Stats. 137–145.

On May 8, 1906, Munnah, without the approval of the Secretary of the Interior, by warranty deed conveyed 80 acres of her own allotment and 120 acres allotted to her son, Jeff Coker, or a total of 200 acres, to the appellee, J. B. Stigall, for $200. This was before any patent had been issued upon any of the land.

Separate rolls were made of the Seminoles by blood and the freedmen, but no separate rolls were made of the adopted citizens, but they were carried in the rolls of the Seminoles by blood. The freedmen were all of African descent, and their character is quite fully explained in Nunn v. Hazelrigg, 216 Fed. 330, 132 C. C. A. 474.

The Indians as a rule never submitted to slavery. Therefore, if one were entered upon the freedmen's roll, it would appear he was not an Indian; but how about those entered upon the roll of Seminoles by blood as adopted? Every human being was capable of adoption by the tribe whether of the red race but of another tribe, the white, the black, the brown, or the yellow races. It is almost a matter of common knowledge that some Indians, having ceased the nomadic life of their ancestors, found their relief from the tedium of the new domestic system in a change of tribes. It is conceded there were 20 persons on the Seminole roll by adoption, but it does not appear whether they were Indians of other tribes or to what race they belonged.

What therefore does the entry of a name on the roll of Seminoles by blood of one as a member of the tribe by adoption indicate as to what race he belonged to? Absolutely nothing. The Dawes Commission, it is true, was a quasi-judicial body, but the entry upon a roll of the Seminoles by blood that a given person became a member of the tribe by being adopted was no more an adjudication that he is one of the white race than that he is an Indian.

We conclude that the judicial body, the Dawes Commission, never made any adjudication as to whether Munnah was a white woman or an Indian, and the case is reversed and remanded, with instructions that the motion to dismiss should have been overruled and to set aside the court's order to the contrary and to give the appellee an opportunity to answer.