## MUNNAH v. GATES.

No. 9265.—Opinion Filed June 24, 1919.

Rehearing Denied Oct. 14, 1919.

(Syllabus by the Court.)

1. **Indians—Lands—Removal of Restrictions—Status of Adopted Citizens—Evidence.**

Act Cong. April 21, 1904, c. 1402, 33 Stat. 189-204, which provides that all restrictions upon the alienation of lands of all the allottees of the Five Civilized Tribes who are not of Indian blood, except minors, are, except as to the homestead, thereby removed, has no application to Creek Indians of more than half blood adopted by the Seminoles before the allotment, but is limited in its application to the adopted citizens not of any degree of Indian blood; and held, further, that where a person of any degree of Indian blood was enrolled by the Dawes Commission as "adopted," parol evidence may be received to show that such person is an Indian or possesses a quantum of Indian blood and thereby entitled to all protection and benefits thereof, notwithstanding such enrollment.

2. **Same—Verdict—Sufficiency of Evidence.**

Record examined, and held, that there was no evidence reasonably tending to support the verdict of the jury.

Error from District Court, Seminole County: J. W. Bolen, Judge.

Action in ejectment by Munnah, Seminole Roll No. 1066, against E. S. Gates. Verdict and judgment for defendant, motions for judgment notwithstanding the verdict and for a new trial overruled, and plaintiff brings error. Reversed and remanded, with instructions to grant a new trial.

James C. Wilhoit and John W. Willmott, for plaintiff in error.

W. W. Pryor and T. S. Cobb, for defendant in error.

JOHNSON, J. This is an action in ejectment filed in the district court of Seminole county, on March 24, 1914, by the plaintiff in error, Munnah, against the defendant in error, E. S. Gates. By her petition the plaintiff in error seeks to recover from the defendant in error her individual allotment of 120 acres of land situate in Seminole county, together with damages for its detention.

In addition to the usual allegations in such petition, it is stated by the plaintiff that she is a Creek Indian of full blood, but that by reason of long residence in the Seminole Nation she was adopted by that tribe, and is enrolled upon the allotment roll of the said Seminole Tribe of Indians, opposite No. 1066, as an "adopted citizen."

July 3, 1914, the defendant filed his answer, which contains a general denial, a plea of the statute of limitations, and a plea of bona fide purchaser.

January 1, 1917, the plaintiff filed her reply, in which she denies that the defendant has any title to said land, alleging all pretended conveyances held by him are void, for the reason that she is a restricted Indian and never had any power to alienate. The reply also contains a general denial, and a specific denial of the plea of the statute of limitations.

On January 4, 1917, the cause was tried to a jury, and on the same date the jury returned a verdict for the defendant.

The plaintiff in due time filed a motion for judgment notwithstanding the verdict, and also statutory motion for new trial, from the overruling of which the plaintiff appeals to this court by petition in error with copy of case-made attached, which petition contains numerous assignments of error, the first twelve of which go to the questions of overruling motions for new trial and for judgment in accordance with the verdict of the jury, and the remaining assignments go to the question of the rulings of the court in admitting and rejecting testimony upon the trial of the cause.

At the commencement of the trial the parties made the following agreement and stipulations:

"It is agreed by and between the parties hereto that Munnah was duly enrolled as a citizen of the Seminole Tribe of Indians, on the roll of the citizens by blood, opposite No. 1066, but is not admitted by the defendants that the plaintiff has any Indian blood at all; and as such received the following allotment of land in Seminole county, Okla., to wit:

"As surplus: The northeast quarter of the northeast quarter and the southwest quarter of the northeast quarter of section twenty-five, township nine north, range five east.

"And as her homestead allotment: The northeast quarter of the northeast quarter of said section twenty-five, township five north, range five east.

"That thereafter, to wit, on the 8th day of May, 1906, said Munnah executed a warranty deed to said land purporting to convey the aforesaid surplus to J. B. Stigall, reciting a consideration of $200.00, which deed appears of record in Book K, at page 457 of the deed records of Seminole county, Okla.

"That thereafter, to wit, on July 27, 1908, said Munnah executed a warranty deed to

J. B. Stigall purporting to convey the aforesaid homestead allotment reciting a consideration of $150.00, which deed appears of record in Book 5 at page 594 of the deed records of Seminole county, Okla.

"That thereafter, to wit, on February 17, 1909, J. B. Stigall executed a warranty deed to L. L. Cobb purporting to convey the whole of said land, both homestead and surplus, which deed appears of record in Book 10 at page 9.

"That thereafter, to wit, on January 1, 1909, L. L. Cobb, joined by her husband, T. S. Cobb, executed a warranty deed to E. S. Gates purporting to convey the whole of said land, which deed appears of record in Book 27 at page 311 of the deed records of Seminole county, Okla."

The theory of the plaintiff, as contended for in her brief, was and is that, while on the Seminole Indian roll merely as an adopted citizen, she was in reality a full-blood Creek Indian, and therefore she was at all times restricted and without power to convey the lands.

A certified copy of the census card showing the enrollment of Munnah, the plaintiff, was introduced by the plaintiff without objection, which shows, among other things, that the plaintiff was enrolled in 1897 as an adopted citizen of the Seminole Tribe of Indians, and was then 60 years of age, enrolled opposite No. 1066; that she had a daughter, Katie Miller, age 27, placed upon the roll as a half blood, a granddaughter, Cinda Coker, age 3 months and enrolled a quarter, new-born, and a son, Nussey Miller, age 26, half blood, and a son, Jeff Coker, age 7 years, half blood.

The evidence further showed that the plaintiff was married to Tewetka, a full-blood Creek Indian, and they had children named Katie Miller and Nussey Miller, enrolled as half blood, as before stated, and that she married London Coker, who was a Seminole, full blood, and they had a son, Jeff Coker, who was enrolled as a half blood, and a granddaughter, Cinda Coker, enrolled as a new-born, quarter blood.

The plaintiff's witness Jennie Jacobs testified that she knew the plaintiff; that plaintiff was much older than witness; that plaintiff was witness' father's wife; that she knew plaintiff's father; that plaintiff's father's name was Con-Charte Harjo, and her mother's name was Susan, and that they were full-blood Creek Indians; that both her father and mother died over 30 years ago; that witness' father's name was London Coker. She testified, on cross-examination, that all she knew about the case was what

the plaintiff had told her, and that was the way she found out about it.

Peter Ewing testified for the plaintiff that he was a Creek Indian about 56 years of age; that he knew the plaintiff, and that she was a sister of his mother; that from all he knew she was a full-blood Indian and that she had been so considered by the Indians; that plaintiff spoke the Creek language, and no other language; that he lived at Eufaula, had never lived in the Seminole Nation; that plaintiff's first husband was a full-blood Indian, named Tewetka, second husband was a full-blood Indian named London Coker; knew plaintiff's father and mother, Harjo and Susan; that they were both full-blood Creek Indians.

Lester Williams testified for the plaintiff that he was a Creek Indian, 77 years old, and that he knew the plaintiff, and that she was a full-blood Creek Indian; knew her father, Harjo, and mother, Susan; that they were both Creek Indians, and spoke the Creek language and that they looked like Indians, and were full-blood Indians. Testified on cross-examination that he lived near Eufaula, and that his father was a white man.

Plaintiff testified in her own behalf that she was an Indian, a Seminole, spoke the Creek language. Her father's name was Con-Charte Harjo, and her mother's name was Susan; that they were both dead; that they were Indians of the Creek Tribe, and full blood. She did not know her age. On cross-examination, stated that she did not remember when she was enrolled; that it was one of the boys that did the enrolling of her; that the band chief's name was Otiarche, and that her first husband's name was Tewetka and he was a full-blood Creek; her second husband was London Coker, a full-blood Indian.

Lillie Chupco testified for the plaintiff that witness was told that she was 80 years old just recently; that plaintiff was older; that witness knew plaintiff's father and mother, Harjo and Susan; that they were both full-blood Creek Indians, and spoke the Creek language; that people considered them Indians. Testified on cross-examination: "Don't know anything about her age herself, but that was what the white people said." Testified that when she was sworn they told her that she was just to testify that she "knowed Munnah's father."

No witness for the defendant testified as to whether or not the plaintiff was an Indian by blood. At the conclusion of the testimony the plaintiff requested peremptory

instructions to the jury in favor of the plaintiff for the land sued for, and for such amounts of rents as the proof established, limiting rents to the years 1912, 1913, 1914, 1915, and 1916, which was refused by the court, and excepted to by the plaintiff.

The court in his charge submitted but one question of fact to the jury, which was as to whether or not the plaintiff was an Indian of the Five Civilized Tribes, which question was submitted in paragraphs 2 and 3 of the court's instructions to the jury, which were as follows:

"(2) You are instructed that, if you find by a preponderance of the evidence that the plaintiff is an Indian of the Five Civilized Tribes, then you will find for the plaintiff for the possession of the lands described in the petition and for damages for the wrongful withholding of same in such sum as you may find the reasonable rental value of the same to be for the years 1912, 1913, 1914, 1915, and 1916, not to exceed $600, unless you find for the defendant under other instructions herein given you. Given; excepted to by plaintiff; exception allowed.

"(3) If you find from the evidence in this case that the plaintiff is an Indian of the Five Civilized Tribes, but that she is less than a half blood, then you will find for the defendant for the possession of the homestead allotment described as follows: The northwest quarter of the northeast quarter of section 25, township 9 north, range 5 east. Given; excepted to by plaintiff; exception allowed."

The jury returned a general verdict in favor of the defendant.

The first proposition discussed in the brief of the plaintiff under the assignments of error is:

"There is no evidence in the record reasonably tending to support the verdict and judgment."

The plaintiff alleged in her petition that she is a Creek Indian of the full blood; that her father and mother, naming them, were Creek Indians of the full blood, and by reason of her residence in the Seminole Nation she was by action of the Seminole National Commission adopted into such tribe, and enrolled upon the rolls as an Indian citizen thereof, opposite roll No. 1066, as an adopted citizen, and that the land in controversy, describing it, was allotted to her. By the stipulations entered into between the parties herein, all issues of fact were taken from the jury, except the issue of whether or not the plaintiff was an Indian by blood, and the quantum thereof, and a member of one of the Civilized Tribes of Indians.

The certified copy of the census card offered by the plaintiff showing that her name was entered on the rolls of Seminoles by blood and as a member of the tribe by adoption afforded no evidence of, nor did not indicate to, what race she belonged. Such was the holding of the United States Circuit Court of Appeals, Eighth District, in the case of United States v. Stigall, 226 Fed. 193, 141 C. C. A. 188, construing the identical card of which this is a copy, and this court cited that case with approval in the case of Scott v. Quimby, 56 Okla, 301, 155 Pac. 1154.

The testimony of the plaintiff reasonably tended to support the issue submitted to the jury by the court that she was a Creek Indian of the full blood. We fail to find in the record, after a thorough examination thereof, that the defendant offered any testimony that in any way reasonably tended to show to what race the plaintiff belongs, or in any way contradicted the testimony offered by the plaintiff. The defendant has cited no authorities in his brief, except four decisions of this court upon a proposition about which there is no dispute, that is:

"That where there is any substantial evidence reasonably tending to support the verdict of the jury, the same will be permitted to stand here in review."

That is the rule announced by this court in case of Avants v. Bruner, 39 Okla. 730, 136 Pac. 593; City of Hugo v. Nance, 39 Okla. 640, 135 Pac. 346; C., R. I. & P. R. Co. v. Gilmore, 52 Okla. 296, 152 Pac. 1096; Great Western Mfg. Co. v. Mill & Elevator Co., 26 Okla. 626, 110 Pac. 1096. And many other decisions of this court might be cited in support of the rule announced, but the converse of the rule that—

"Where it is apparent from the record that the evidence does not reasonably sustain the verdict of the jury, this court will set said verdict aside and grant a new trial." Conwill v. Eldridge, 71 Oklahoma, 177 Pac. 79, citing Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 Pac. 93; Harrah v. First National Bank, 26 Okla. 620, 110 Pac. 725; Solts v. S. W. Cotton Oil Co., 28 Okla. 706, 115 Pac. 776; Offutt v. Wagoner, 30 Okla. 458, 120 Pac. 1018; Fitzpatrick v. Nations, 30 Okla. 462, 120 Pac. 1021.

We have carefully searched the record in this case and have been unable to find any evidence reasonably tending to support the general verdict rendered by the trial jury in favor of the defendant. Therefore the judgment of the trial court is reversed, and this cause remanded, with instructions to grant

a new trial and proceed in accordance with this opinion.

OWEN, C. J., and KANE, HARRISON, and RAINEY, JJ., concur.