KANE, JOHNSON, McNEILL,† MILLER, NICHOLSON, and COCHRAN, JJ., concur.

---

## JOHNSON et al. v. HICKEY et al.

No. 10710—Opinion Filed Jan. 11, 1923.

(Syllabus.)

1. **Indians — Quantum of Blood — Department Records as Evidence.**
Certified copies of the records pertaining to the allotment of lands of the Five Civilized Tribes of Indians, deposited in the office of the United States Indian Agent, furnished to the various counties of the state under the provisions of section 12 of the act of Congress of May 27, 1908 (35 Stat. L. 312), are not conclusive evidence of the quantum or Indian blood of an enrolled citizen or freedman of said tribes.

2. **Same.**
By the provisions of section 3 of the act of Congress of May 27, 1908 (35 Stat. L. 312), the rolls of citizenship and of freedman of the Five Civilized Tribes approved by the Secretary of the Interior are made conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes, to determine questions arising under said act.

3. **Same—Parol Evidence.**
Where a person is enrolled on the final rolls of the Seminoles by blood as a member of the tribe by adoption, such rolls showing nothing as to what race he belonged, parol evidence is admissible to show that he is an Indian, and the quantum of Indian blood he possesses.

Error from District Court, Seminole County; Frank L. Warren, Special Judge.

Action by Kizzie Johnson, nee Kizzie Sam, and Lucy against Egbert J. Hickey et al. for possession of land, and cancellation of deeds, etc. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

J. Read Moore and Burford, Miley, Hoffman & Burford, for plaintiffs in error.

John W. Willmott and R. J. Roberts, for defendants in error.

NICHOLSON, J. This was an action by the plaintiffs in error, as plaintiffs, against Egbert J. Hickey and several others, as defendants, for the possession, accounting for rents and profits of, and cancellation of certain deeds as clouds upon the title to certain lands situate in Seminole county.

The action was dismissed as to some of the defendants named in the petition, some of the defendants defaulted, and others disclaimed. The defendants Ben C. Burris and Mary Burris answered by a general denial. The defendants Egbert J. Hickey and Ira Hickey filed answer admitting possession, pleaded title in themselves, and by way of cross-petition prayed that their title be quieted. Defendants Edward R. Holmes and Ralph W. Holmes answered, setting up a claim of an interest in 80 acres of said land, being that portion of the land exclusive of the homestead, by virtue of a mortgage executed to R. E. Holmes & Sons, by Ben C. Burris and Mary Burris, who they alleged

were the owners of the land at the time of the execution of the mortgage.

The cause was tried to a jury, and after all the evidence had been introduced, the court instructed the jury to return a verdict for the defendants. Upon this verdict judgment was entered adjudging and decreeing the defendant Egbert J. Hickey to be the owner of the land in fee simple, subject to the mortgage in favor of the defendants Edward R. Holmes and Ralph W. Holmes, and quieting the title in Hickey, subject to said mortgage.

The cause is presented to this court for review, upon various assignments of error, but may be disposed of upon a consideration of but the one which challenges the action of the trial court in directing a verdict for the defendants.

It was stipulated at the trial that the land involved was duly allotted to Daniel Sam, a duly enrolled citizen of the Seminole Nation opposite roll No. 1811, and conveyed to him by homestead and surplus deeds duly executed and approved, and that Daniel Sam died Aug. 10, 1917, in McIntosh county, Okla. The evidence shows that he died without wife or issue, father or mother surviving, and that plaintiffs, his sisters, were his next of kin, and only heirs at law. The evidence is also sufficient to show title in the plaintiffs, if the lands had not been alienated and were owned by Daniel Sam at the time of his death. The defendants claim title through certain conveyances by Daniel Sam. The plaintiffs claim that these conveyances are invalid by reason of restrictions upon alienation, while the defendants insist that the conveyances are valid by reason of the restrictions having been removed by acts of Congress.

Whether or not restrictions upon alienation were so removed depends upon the degree of Indian blood of Daniel Sam, for it was stipulated at the trial that restrictions had never been removed by the Secretary of the Interior, and that the secretary had never approved any of the deeds. The deeds in question are as follows: By Daniel Sam to Ben C. Burris, dated October 1, 1906; by Daniel Sam to H. J. Wooton and Thomas Lovelady, dated July 27, 1908, and by Daniel Sam to W. E. Smith, dated December 17, 1910. The interests, if any, acquired by the grantees in these deeds passed under other deeds, and was at the time of the trial vested in the defendant Egbert J. Hickey, subject to the mortgage to Edward R. and Ralph W. Holmes on the surplus allotment.

To sustain their contention that the deeds executed by Daniel Sam were void, the plaintiffs introduced in evidence the final rolls of the Seminoles by blood, which, so far as the allottee was concerned, read as follows: "No. 1811, Name, Sam, Daniel; Age 20; Sex Male; Blood. Adop.; Census Card No. 572" and a copy of that portion of the final and approved rolls of citizens of the Five Civilized Tribes of Indians showing the enrollment on:

"Seminole Rolls Indians by Blood, opposite No. 1811; Name, Sam, Daniel; Age 20; Sex M; Blood Adop.; Tribal Enrollment, Year, 1897. Band Echoille. No. 162; Census Card, No. 572"

—duly certified by the Superintendent of the Five Civilized Tribes and a copy of such rolls duly certified by the Secretary of the Interior. They also introduced the testimony of various witnesses tending to show the degree of Indian blood of the allottee, Daniel Sam.

The defendants introduced in evidence, over the objection of plaintiffs, that portion of the records in the office of the county clerk of Seminole county, known as the Dawes Commission Land List, pertaining to the allottment of Daniel Sam, which is as follows:

"Roll No. 1811; Name Daniel Sam, P. O. Wewoka; Age 20; Sex male; description (land described); Blood A. W.; acres 40 and 80; remarks: Homestead opposite 40 and surplus opposite 80"

—and also introduced the testimony of several witnesses who testified that the letters "A. W." appearing in said record meant Adopted White. The above mentioned record is certified to by the Commissioner to the Five Civilized Tribes as follows:

"The Department of the Interior, Commission to the Five Civilized Tribes:

"This is to certify that I am the officer having in custody pertaining to the enrollment of members and the allottment of the lands of the Five Civilized Tribes and that the above and foregoing sheets Nos. 1 to 323, inclusive, contain a correct compilation of such records showing the allottment of lands and the enrollment of the allottee thereof of all that portion of Seminole county, Oklahoma, listed in township five to twelve north, inclusive, of range seven and eight east said being completed as of August 1, 1908, J. G. Wright. Commissioner, Muskogee, Oklahoma, February 5, 1919."

The trial court took the position that, as it had been shown by uncontroverted testimony that the letters "A. W." appearing in the Dawes Commission Land List in the of-

fice of the county clerk meant Adopted White, such record was conclusive, and that the lands in controversy were unrestricted at the time of the conveyances by Daniel Sam; and so instructed the jury and directed a verdict for the defendants.

We do not think this position tenable. While this land list, if properly certified, would be admissible in evidence under the provisions of section 5112, Rev. Laws 1910, we fail to find any provision in any act of Congress making it conclusive evidence of the quantum of blood of an allottee. These lists were furnished the various counties of the state under authority conferred by section 12 of the act of Congress of May 27, 1908 (35 Stat. at L. 312), which reads:

"That all records pertaining to the allotment of lands of the Five Civilized Tribes shall be finally deposited in the office of the United States Indian agent, Union Agency, when and as the Secretary of the Interior shall determine such action shall be taken, and there is hereby appropriated, out of any money in the treasury not otherwise appropriated, to be immediately available as the Secretary of the Interior may direct, the sum of fifteen thousand dollars, or so much thereof as may be necessary to enable the Secretary of the Interior to furnish the various counties of the state of Oklahoma certified copies of such portions of said records as affect title to lands in the respective counties."

This section merely provides for depositing all records pertaining to the allotment of lands of the Five Civilized Tribes in the office of the United States Indian Agent, Union Agency, and appropriated funds to enable the Secretary of the Interior to furnish various counties of the state certified copies of such portions of said records as affected the title to lands in the respective counties. Nothing whatever is said in regard to the conclusiveness of said records in any particular. Furthermore, the certficate thereto does not recite that it is a copy of the rolls; in fact, it only purports to be a compilation of the records showing the allotment of lands and the enrollment of the allottees thereof.

Section 3 of said act provides that the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes, and of no other persons. to determine questions arising under the act.

By this provision the rolls, not a compilation of the records pertaining to the allot-

ment of lands, are made conclusive evidence as to the quantum of Indian blood, and they are conclusive only of that which they show. In this case, they do not show the quantum of Indian blood of Daniel Sam. His name appears on the final rolls of the Seminoles by blood, as a member of the tribe by adoption. There is no indication as to what race he belonged. For all that is shown, he may have been of the blood of either of the Five Civilized Tribes, or he may have been of the white, or some other race. The entry of a name on the rolls of Seminoles by blood of one as a member of the tribe by adoption indicates absolutely nothing as to what race he belonged. United States v. Stigall, 226 Fed. 190. The rolls failing to disclose the blood of the allottee. a member of the tribe by adoption, parol evidence was admissible to show that he was an Indian, and the quantum of Indian blood he possessed. Lulu v. Powell, 64 Okla. 200, 166 Pac. 1050; Munnah v. Gates, 76 Okla. 167, 184 Pac. 127.

The trial court erred in directing a verdict for the defendants. The rolls failing to show that the allottee was an Indian or the quantum of Indian blood, these questions should have been submitted to the jury, and whether or not the land was alienable at the time of the execution of the various deeds depends upon the quantum of Indian blood. if any, of the allottee, as disclosed by the evidence.

The judgment of the trial court is reversed, and the cause remanded for a new trial.

JOHNSON, McNEILL, MILLER, KENNAMER, and COCHRAN, JJ., concur.